Edward T. DEMPSEY,
Plaintiff–Appellee,

v.

MAC TOWING, INC.,
Defendant–Appellant.

Edward T. DEMPSEY, Plaintiff,

v.

LONE STAR INDUSTRIES,
INC., Defendant.

No. 88–7355.

United States Court of Appeals,
Eleventh Circuit.

July 12, 1989.

Salley & Associates, Fred E. Salley, Lee M. Peacocke, New Orleans, La., Johnstone, Adams, Bailey, Gordon & Harris, Thomas S. Rue, Mobile, Ala., for defendant-appellant.

Cunningham, Bounds, Yance, Crowder & Brown, Andrew T. Citrin, Robert T. Cunningham, Jr., Steven A. Martino, Mobile, Ala., Utsey, McPhearson & Christopher, William L. Utsey, Butler, Ala., for plaintiff-appellee.

Before JOHNSON and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

As the result of a jury trial, Mac Towing, Inc. ("Mac Towing") was held liable to Edward T. Dempsey in the amount of $300,-000 for negligence under the Jones Act, 46 U.S.C.A.App. § 688. Mac Towing appeals the jury's verdict as contrary to the evidence presented at trial and challenges several of the district court's actions prior to and during the trial. We affirm.

## I. FACTS

From 1962–1982, Dempsey worked as a deckhand for Lone Star Towing, Inc. ("Lone Star"). On November 7, 1981, he hurt his back while working and was subsequently diagnosed as suffering from a herniated or bulging disc. He then brought a claim for relief against Lone Star under the Jones Act. In April of 1982, his employment with Lone Star was terminated because the company dissolved its Marine Operations Branch. In August of 1982, Dempsey applied for a job with Mac Towing as a deckhand. He passed the required physical examination and was hired to work on the M/V LAURA McKINNEY ("LAURA M.").

On July 6, 1983, he was working with another deckhand to lash two barges together so they could be towed. One of the barges, ACBL 3088, had been carrying a cargo of corn gluten pellets which had been only partially unloaded. The barge had been exposed to the elements for several days and the surface of the barge was slick with corn grain and corn grain dust. After attaching the LAURA M. to the stern of Barge ACBL 3200, Dempsey proceeded to the bow of ACBL 3088 so as to lash it, with the help of his co-worker, to the bow of ACBL 3200. As he was removing slack from the cable linking the two barges he stepped backward, fell on his back and was injured. He claims he fell as a result of the presence of wet grain on the deck of ACBL 3088.

Shortly after the fall, Dempsey began to experience severe back pain. On July 12, 1983, he was admitted to the hospital where he was treated for a ruptured disc. As a result of this injury, he was unable to continue work as a deckhand and took a job as a dispatcher, working for substantially lower wages than he was able to earn as deckhand.

In October 1984, Dempsey brought an action against Mac Towing in Alabama state court seeking damages arising from the July 6, 1983, back injury. His complaint alleged that the injury was a proximate result of Mac Towing's negligence as well as the unseaworthiness of the vessel upon which he was working. Mac Towing removed the action to federal district court. In March 1987, Dempsey moved to consolidate his action against Mac Towing with the Jones Act action he had pending against Lone Star. In May 1987, the motion to consolidate was granted only for the purposes of trial.

The case was tried in April 1988. At the close of Dempsey's case, Mac Towing moved for directed verdicts on both the negligence and the unseaworthiness claims. These motions were renewed at the close of Mac Towing's case. The district court granted a directed verdict on Dempsey's unseaworthiness claim against Mac Towing, but submitted the claims of Jones Act negligence against both Mac Towing and Lone Star to the jury. The jury found Mac Towing liable for negligence and awarded Dempsey $300,000 in damages. They also found Lone Star liable for negligence but did not award Dempsey any damages. The district court found the verdict as to Lone Star irreconcilable, and resubmitted the verdict against Lone Star for reconsideration. The jury subsequently found Lone Star was not liable to Dempsey under the Jones Act. Mac Towing moved the district court for a new trial, pursuant to Fed.R. Civ.P. 59, and for entry of judgment notwithstanding the verdict, pursuant to Fed. R.Civ.P. 50. The district court denied these motions.

On appeal, Mac Towing challenges the following actions by the district court before and during the trial: (i) granting Dempsey's motion for a continuance to allow him to retain an economist; (ii) denying Mac Towing's motion for a mistrial after inadmissible evidence was read to the jury, and (iii) the decision not to give three of Mac Towing's requested jury charges. Mac Towing also challenges the jury verdict, claiming that there was an absence of evidence of its negligence and that there was sufficient evidence to demonstrate Dempsey's contributory negligence. We consider each of appellant's claims in turn.[1]

---

**1.** Appellant also contends that the trial court erred in not, *sua sponte*, reprimanding counsel for Lone Star for engaging in an improper "golden rule" argument. Such an argument, which encourages the jurors to put themselves in the shoes of the plaintiff and "do unto him as they would have him do unto them" under similar circumstances, encourages the jurors to decide the case on the basis of sympathy rather than from an objective review of the evidence, and will ordinarily result in reversal. *Woods v. Burlington N. R.R. Co.,* 768 F.2d 1287, 1292 (11th Cir.1985), *rev'd on other grounds,* 480 U.S.

1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987). The Court need not address this claim because appellant has not preserved it on appeal. To preserve an allegation of improper argument on appeal, timely objection must be made to bring the trial court's attention to the alleged error. *Id.* This rule applies even when an argument is inflammatory, prejudicial or improper. *Id.* Appellant made no objection to Lone Star's closing argument and the issue may not now be argued on appeal. Even if the issue was properly presented to this Court, a study of the record, particu-

## II. DISCUSSION

### 1. Conduct of the Trial

#### A. *Granting of a Continuance*

■ Dempsey's complaint included a claim for lost future wages. Prior to the date set for trial, Dempsey neglected to retain an economist in order to prove the present value of his claim. On the day the trial was to begin, appellant moved *in limine* to preclude admission of any evidence of future wage loss as irrelevant in the absence of expert testimony which could prove the present value of Dempsey's future lost wages. The district court granted appellant's motion *in limine*, but also granted Dempsey's motion for a continuance to allow him to retain an economist.

The decision to grant a continuance is within the sound discretion of the district court. *Crompton–Richmond Co., Inc., Factors v. Briggs*, 560 F.2d 1195, 1202 (5th Cir.1977). Dempsey's counsel should have been aware of the need for expert testimony in a case like this. *See, e.g., Deakle v. John E. Graham & Sons*, 756 F.2d 821, 826–34 (11th Cir.1985) (providing extensive discussion of proof necessary for calculation of future lost wages and admonishing litigants to be "attentive" to these issues at trial). However, appellant had asked for and been granted three continuances at the time Dempsey requested this continuance, his first one. Further, the district court judge granted the continuance to ensure that the damage issue could be fully explored at trial. The district court's decision to grant Dempsey a continuance under these circumstances was not an abuse of discretion.

#### B. *Motion for Mistrial*

■ Appellant claims that the district court erred in failing to grant a mistrial when inadmissible evidence was read to the jury which it alleges was sufficiently prejudicial to deny appellant a fair trial. The district court's decision not to declare a mistrial is reviewed under the abuse of discretion standard. *United States v. Elliott*, 849 F.2d 554, 559 (11th Cir.1988).

During Dempsey's presentation of his case-in-chief, Captain Royce Garrison, who was piloting the LAURA M. at the time of Dempsey's 1983 accident, testified. He stated that grain on the deck of a barge was a condition which normally existed after the cargo had been discharged from a grain barge. He further testified that he *assumed* Mac Towing was aware of the condition aboard the barges. Appellee then directed Garrison to read a written statement he had given to appellee prior to trial. His written statement included the assertion that the company knew about the unsafe condition and did nothing about it.

After Garrison read the statement to the jury, appellant objected to the statement's admissibility and requested a mistrial. The district court sustained appellant's objection and instructed the jury to disregard Garrison's statement insofar as it purported to state an opinion as to what Mac Towing knew or did not know about deck conditions on the barge. Appellant argues that this instruction was inadequate to cure the impression left with the jury that the company had sufficient knowledge of the existence of the hazard to render it negligent for failure to make the barge surface safe.

However, Garrison proceeded to testify that he knew of the hazard presented by grain on the deck of the barges and that he had discussed the hazard with other boat captains. This testimony, combined with other testimony regarding the generally recognized danger of grain residue on barges, provides evidence from which the jury could have inferred appellant knew or *should have known* of the dangerous deck condition. Under these circumstances, appellant was not unduly prejudiced by the reading of Garrison's statement. We conclude that the district court did not abuse its discretion in reading the jury a curative instruction instead of declaring a mistrial.

#### C. *Jury Instructions*

■ Appellant challenges the district court's decision not to give three of its

larly the charge to the jury by the trial judge, reflects that this contention lacks merit.

requested jury charges. The standard of review of a district court's jury instructions is as follows:

> In reviewing the district court's jury instructions, this court will look to see whether the charges, considered as a whole, sufficiently instruct the jury so that the jurors understand the issues involved and are not misled.... Moreover, the trial court's refusal to give a requested instruction is not error where the substance of that proposed instruction was covered by another instruction which was given.... If a requested instruction is refused and is not adequately covered by another instruction, the court will first inquire as to whether the requested instruction is a correct statement of the law.... If the instruction is a correct statement of the law, the court will next look to see whether it deals with an issue which is properly before the jury.... In the event both these standards are met, there still must be a showing of prejudicial harm as a result of the instruction not being given before the judgment will be disturbed.

*Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir.1985) (citations omitted).

All three of the requested charges dealt with the doctrine of unseaworthiness and were submitted before the district court granted appellant's motion for a directed verdict on the unseaworthiness claim. Appellant now suggests that they were applicable in the negligence context because they directly addressed Dempsey's alleged contributory negligence.[2]

The instructions the district court ultimately gave, when considered as a whole, adequately advised the jury on the issues of negligence and contributory negligence. The district court followed the Eleventh Circuit pattern charge on Jones Act negligence. The instructions stated that "the mere fact that a seaman is injured in the line and course of his work does not in and of itself, without more, mean that the employer is liable under the Jones Act." The instructions also set out the standard of contributory negligence under the Jones Act including the relevance of a "safer alternative way" to perform a task and the possible relevance of Dempsey's awareness of a "hazardous condition." Given these instructions, the standard for negligence and contributory negligence was clearly set out and instructions relevant to the unseaworthiness claim were properly omitted.

### 2. The Jury Verdict

■ In challenging the jury verdict, appellant first argues that there was insufficient evidence presented on the issue of its negligence to justify a finding of liability. Initially, we note that the duty of care a shipowner owes to a seaman has traditionally been recognized to be a very high one. Because seamen are subject to rigorous discipline while at sea and must accept, without criticism, working conditions on orders from superior officers, admiralty law assigns a heavy responsibility for the safety of seamen to the owner of the ship. *See, e.g., Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 103, 64 S.Ct. 455, 459, 88 L.Ed. 561 (1944). As a corollary of this general duty, owners are held to a high degree of care in providing a safe work environment. *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 223 (5th Cir.1975). In light of these general principles, the courts have allowed a seaman to recover on a Jones Act claim with a lower showing of proximate cause than would be required in a non-admiralty case. *See id.* at 222–23 (comparing proximate cause requirements in admiralty and non-admiralty cases); *see also Sanford Bros. Boats, Inc. v. Vidrine*, 412 F.2d 958, 962 (5th Cir.1969) (in Jones Act case, sufficient evidence exists to support jury verdict on issue of causation if employer negligence played even slightest part in producing injury); *accord McClow v. Warrior &*

---

**2.** The proposed instruction on the "Walker Doctrine," which holds that if a plaintiff's injuries arose from his own failure to perform his employment obligations his Jones Act claims are barred, applies only to ship officers who are charged with the duty of maintaining the ship. *Villers Seafood Co. v. Vest*, 813 F.2d 339, 342 (11th Cir.1987). As such, that instruction was clearly inapplicable here.

*Gulf Navigation Co.*, 842 F.2d 1250, 1251 (11th Cir.1988).

■ We review the evidence with this "slight negligence" standard and the elements of a Jones Act negligence claim in mind. To find that Mac Towing was negligent in its duty to provide a safe working environment for Dempsey, the jury had to find some evidence that the condition of the deck on ACBL 3088 was unsafe, that the company knew or should have known of the danger, and that it did nothing about the danger.[3] *See Perry v. Morgan Guaranty Trust Co.*, 528 F.2d 1378, 1379 (5th Cir.1976) ("Under familiar principles of negligence, in Jones Act cases, there must be some evidence from which a jury can infer that the unsafe condition existed and that the owner either knew or, in the exercise of due care, should have known of it."). Mac Towing argues that no substantial evidence was presented at trial to justify these conclusions in this case.

First, Mac Towing argues that the presence of wet grain on the deck of the barge, even if it resulted in a slippery surface, was not necessarily evidence of an unsafe working condition. As to the conditions of the deck, a seaman is not entitled to a slip-free deck but only to a deck that is not unreasonably slippery given the work he is expected to perform. *Cf. Johnson v. Bryant*, 671 F.2d 1276, 1279 (11th Cir.1982) (discussing reasonable expectations of deck conditions in context of unseaworthiness claim). The determination of whether a deck is "unreasonably slippery" is a question of fact for the jury to determine, in light of all the evidence presented. In this case, appellee testified that the grain upon which he slipped was "like soap." The acting captain of the LAURA M., Royce Garrison, and the appellant's port captain, Ted Ewing, both testified that wet grain on the deck of a barge creates a "slip hazard." Given that the deckhands were expected to work quickly to lash two barges together while moving on such a slippery surface, a jury could have determined that the deck

was unreasonably slippery for the type of work Dempsey was expected to do on it.

Secondly, the evidence suggests that the company knew or should have known that the surface of grain barges often becomes very slippery. Captain Garrison testified that he was aware there was grain dust on ACBL 3088 at the time Dempsey boarded it and that grain dust was a common problem on numerous other barges. He admitted having discussed the problem with other captains. He testified that he felt it was an unsafe practice to send deckhands out to hook up barges with wet grain on their decks. Ewing also testified that grain on the walkway of a grain barge renders the walkway unsafe.

Thirdly, evidence presented at trial established that, although Mac Towing knew or should have known of the danger of ordering deckhands to work on the slippery surface, it did not warn deckhands of the exceptionally slippery conditions. While appellant's policy and procedure book contained a "rule" requiring deckhands to inspect barges before boarding them, this rule was apparently not enforced. Captain Garrison testified that he did not expect his deckhands to inspect a grain barge before boarding but simply expected them to secure the barges and return to the LAURA M. There is no question that Dempsey was never told that the surface was hazardous, that he should avoid the hazardous surface or that he was expected to eliminate the hazard himself. Because of the heavy responsibility the owner of a vessel bears to provide safe working conditions, the seaman's duty to protect himself is less than in an average working environment. "His duty is to do the work assigned, not to find the safest method of work. This is especially true when his supervisor ... knows the working method used by the seaman, and does nothing about it." *Spinks*, 507 F.2d at 223.

We conclude that there is substantial evidence in the record to support the elements of Dempsey's negligence claim, i.e., that

---

3. An additional element, that at the time in question Dempsey was acting in the course of his employment as a member of the crew of a vessel owned by Mac Towing, is undisputed by the parties.

the barge deck surface was unreasonably slippery in light of appellee's assigned task, that appellant knew or should have known that such a condition likely existed on ACBL 3088 the morning of July 6, 1983, and that appellant did not warn Dempsey of the danger or suggest ways to avoid it.[4]

■ Appellant next argues that evidence at trial established that Dempsey contributed to his injury by failing to avoid a clearly obvious condition and by failing to inform appellant of previous back problems. *See Fontenot v. Teledyne Movible Offshore, Inc.,* 714 F.2d 17, 20 (5th Cir.1983) (although seaman's duty to protect himself is slight, duty does exist); *Savoie v. Otto Candies, Inc.,* 692 F.2d 363, 372 (5th Cir. 1982) (where seaman knowingly exposes himself to conditions of employment while aware of disability which makes those conditions unsafe to him or where he can secure relief by informing his superiors of the condition, he may be found contributorily negligent). Appellant thus challenges the jury's verdict by suggesting that there was insufficient evidence to support a finding that Dempsey was not contributorily negligent.[5]

The standard for contributory negligence in admiralty must be assessed in light of the heavy burden of care shipowners bear with regard to their crew generally. *See Shipman v. Central Gulf Lines, Inc.,* 709 F.2d 383, 386 (5th Cir.1983) (seaman not contributorily negligent because he proceeded into unsafe area of ship, but only if he did so when there was safe alternative available to him of which he knew or should have known); *see also Williams v. Brasea, Inc.,* 497 F.2d 67, 73 (5th Cir.1974) (seaman may not be contributorily negligent for carrying out orders that result in his own injury, "even if he recognizes possible danger"), *modified,* 513 F.2d 301, *cert. denied,* 423 U.S. 906, 96 S.Ct. 207, 46

L.Ed.2d 136 (1975); *McCoy v. United States,* 689 F.2d 1196, 1198 (4th Cir.1982) (seaman "cannot be faulted for recognizing his job is dangerous and doing it anyway, unless he deliberately spurns a safe alternative provided to him").

Dempsey testified that he knew that grain residue on grain barges sometimes made the surface slippery, but that he was still expected to go out and secure the barges. His testimony indicated that he did not have extensive experience working on grain barges. Further, he testified that he did not see the grain on which he fell because he slipped when he stepped backwards into a pile of the grain as he was trying to remove slack from the cables. The jury could have determined from these facts that, under the circumstances, he was not contributorily negligent when he backed up into grain he had not previously observed.

As to the issue of Dempsey's previous back injury, there was ample evidence presented at trial that Dempsey's 1981 back injury was not a proximate cause of his July 1983 injury. Dr. Zarzour, who treated Dempsey for both his 1981 and 1983 injuries, testified that Dempsey's ruptured disk was caused by his July 1983 fall and not by the preexisting condition of a bulging disk. Appellant argues that Dempsey lied about the 1981 injury when he applied for work in 1982. *See Estate of Larkins v. Farrell Lines, Inc.,* 806 F.2d 510, 514 (4th Cir.1986), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987) (ship owner not obligated to provide special safety precautions to protect worker unless he knows of a physical condition requiring such precautions). Dempsey testified that he answered all the company doctor's questions about his prior back injury truthfully. When appellant later learned that Dempsey was having pain in

---

**4.** Appellant also challenges the district court's denial of its motion for a judgment notwithstanding the verdict ("j.n.o.v."). As stated by this Court, in a Jones Act case, such a motion should be granted "only where there is a complete absence of probative fact to support a verdict of negligence for the plaintiff." *Johnson,* 671 F.2d at 1279. Because the finding of negligence was supported by substantial evi-

dence, the district court did not err in denying appellant's j.n.o.v. motion.

**5.** The effect of a finding of contributory negligence in a Jones Act case is to reduce the damages proportionately, not to bar the claim. *Fontenot,* 714 F.2d at 19.

his back, company officials inquired into the nature of the problem but made no changes in Dempsey's employment status as a deckhand. Given that the jury could have determined, based on the evidence presented, that Dempsey was not contributorily negligent in his actions on the barge deck or in his decision to work regardless of his previous back injury, we will not disturb the jury verdict.

 Appellant's final challenge to the jury verdict involves the alleged failure of the district court to resubmit appellant's case for redeliberation when the district court resubmitted the Lone Star verdict. When the district court initially consolidated Dempsey's case against Mac Towing with his case against Lone Star, it expressly noted that the cases were being consolidated "for the purpose of trial only." The issue of Jones Act negligence was submitted to the jury under separate interrogatories. In the case of Mac Towing, the jury awarded $300,000 in damages to Dempsey and found that he was not contributorily negligent. The court found this verdict to be in proper form. However, in the Lone Star case, the jury found in favor of Dempsey but assessed his damages at zero. The district court found that this verdict was not in proper form and gave the jury an additional instruction which explained that "damage is an element of the plaintiff's claim." *See University Computing Co. v. Lykes–Youngstown Corp.,* 504 F.2d 518, 547 (5th Cir.1974) (trial court has authority to resubmit jury verdict if not in proper form). The judge then instructed the jury to redeliberate as to the negligence of Lone Star. They returned a verdict for Lone Star. At no time did Mac Towing object to the district court's handling of the verdicts.

In light of the absence of a contemporaneous objection to resubmission of the Lone Star verdict, we need not reach the merits of appellant's objection raised for the first time on appeal. *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1156 (5th Cir. Unit A 1981). Even considering the argument on the merits, we conclude that the appellant was not prejudiced by the district court's action. When cases are consolidated pursuant to Fed.R.Civ.P. 42(a), the district court must take care to ensure that the trial of the consolidated actions will be conducted in a manner which does not prejudice the rights of the parties. *Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir.1985). The trial judge's actions will be reviewed under an abuse of discretion standard. *Id.* Given that the two cases were consolidated for the purpose of trial only and that the district court judge specifically told the jury to consider the evidence and claims against each defendant separately, the trial judge's decision to resubmit only the Lone Star verdict did not prejudice Mac Towing.

## III. CONCLUSION

As we conclude that none of appellant's claims merit a reversal of the district court's judgment, we AFFIRM the judgment.