**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Hooshang HOOSHMAND,**
**Defendant–Appellant.**

**No. 87–6089.**

United States Court of Appeals,
Eleventh Circuit.

May 16, 1991.

---

Joseph Beeler, Miami, Fla., for defendant-appellant.

Dexter Lehtinen, U.S. Atty., Anne Ruth Schultz, Linda Collins Hertz, Miami, Fla., for plaintiff-appellee.

Before JOHNSON and BIRCH, Circuit Judges, and MERHIGE *, Senior District Judge.

JOHNSON, Circuit Judge:

Defendant Dr. Hooshang Hooshmand appeals his convictions for submitting fraudulent Medicare claims to the United States Department of Health and Human Services

and fraudulent claims for medical services to private insurance companies.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

Dr. Hooshmand, a licensed physician specializing in neurology, treats patients covered by private insurance companies as well as patients insured by Medicare, a federal program which pays for much of the medical costs of persons who are over the age of sixty-five or are disabled. Medicare is administered by the Health Care Financing Administration, a federal agency under the Department of Health and Human Services ("HHS"). The Medicare program is divided into two parts. Medicare Part A covers hospital-related costs, and Part B covers physician-related costs. Blue Cross and Blue Shield of Florida, Inc., ("Blue Cross") administers Medicare in Florida as the agent of the Health Care Financing Administration by processing claims and making payments to physicians on behalf of the federal government.

If Blue Cross compensates a physician directly, it pays eighty percent of the claim as determined by a schedule of allowances. The patient or co-insurer is responsible for the remaining twenty percent. The patient is also responsible for a seventy-five-dollar deductible and all non-covered charges. Physicians participating in the Medicare program cannot collect more than the applicable deductible and co-insurance. Participating physicians are required to obtain the co-payment and deductible from the patient.

Blue Cross publishes a *Manual for Physicians* ("the Blue Cross Manual") which provides physicians with the instructions necessary to file Medicare claims. A physician submits a standard claim form, HCFA form 1500, to Blue Cross. This form requires a physician to describe the services rendered using a set of descriptive terms and codes. The Blue Cross Manual derived the terms and codes from *Current Procedural Terminology* ("CPT"), a guide devel-

---

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virgi- nia, sitting by designation.

oped by the American Medical Association to create a standardized nomenclature for use in insurance claims, and the *Florida Relative Value Studies* ("FRVS"), developed by the Florida Medical Association, Inc., another manual which provided a standardized nomenclature.[1]

As part of his practice, Dr. Hooshmand administered electromyography ("EMG") exams which are designed to determine whether the muscles react to the stimulus transmitted by the nerves. Dr. Hooshmand's practice consisted of providing these tests as part of his care to his own patients as well as part of consultations regarding patients under the care of others.

## B. *Procedural History*

On March 11, 1987, a federal grand jury returned a superseding indictment charging Dr. Hooshmand with seventeen counts of fraud for submitting false Medicare claims ("Medicare fraud"), in violation of 18 U.S.C. §§ 2 & 287, and fifteen counts of mail fraud, in violation of 18 U.S.C. §§ 2 & 1341.[2] The mail fraud counts were based on allegedly false billings to private insurers. The government charged that Dr. Hooshmand presented fraudulent claims for consultation[3] when he should have made claims for new patients and that he presented claims for EMGs that he never performed. Dr. Hooshmand moved to dismiss the indictment for vagueness and because Counts 18–32 failed to allege sufficient use of the mails. The magistrate recommended that Counts 1–17 be dismissed but that Counts 18–32 not be dismissed. The district court rejected the magistrate's recommendation that Counts 1–17 be dismissed and denied Dr. Hooshmand's motion to dismiss as to all counts.

A jury trial began on July 7, 1987. On August 4, 1987, the jury announced a verdict. A poll of the jury revealed the verdict was not unanimous, and the jury returned to deliberations. On August 5, 1987, the jury found Dr. Hooshmand guilty on ten counts of Medicare fraud and seven counts of mail fraud.[4] The court sentenced Dr. Hooshmand to an aggregate sentence of eighteen months of imprisonment, five years of probation to begin upon completion of the jail sentence, full restitution in the amount of $3,101.24, 5000 hours of community service while on probation, a fine of $250,000, and an assessment of $300.

Dr. Hooshmand raises the following issues on this appeal. He contends that his mail fraud convictions for the allegedly fraudulent consultation billings are inconsistent with the Supreme Court's holding in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). He also claims that the definition of consultation is so vague that criminal prosecution for allegedly submitting a false claim for consultation violates due process. Dr. Hooshmand further contends that the evidence is insufficient to support his convictions for fraudulently submitting false EMG claims and that the district court erred in its jury instructions. He claims that the medicare fraud counts were inadequately pleaded in the indictment and that the district court made numerous evidentiary errors. Dr. Hooshmand also argues that the district court's denial of his postverdict motion to interview jurors violated his rights under the First and Fourteenth Amendments. Finally, he claims that the district court erred in imposing a fine of $250,000.

---

1. Hereinafter, we will refer to the CPT and the FRVS collectively as "the private manuals."

2. The initial indictment charged only Counts 1–15. Four of these counts were redacted during the trial, and the indictment was renumbered. All references to specific counts are from this redacted indictment.

3. The Blue Cross Manual defines a consultation as performing services at the request of an attending physician. CPT and FRVS define consultation as performing services at the request of a physician or "other appropriate source". All three manuals require, under most circumstances, that the consulting physician prepare a report for the requesting source. Medicare and FRVS paid more for a consultation than for a new patient.

4. The district court polled the jurors and confirmed that this verdict was unanimous.

## II. ANALYSIS

### A. *The McNally Challenge to the Mail Fraud Convictions*

■ Dr. Hooshmand argues that the mail fraud convictions for the allegedly fraudulent consultation billings are inconsistent with *McNally, supra.* In *McNally,* the Supreme Court held that the mail fraud statute applied only to schemes to defraud for money or property and did not include schemes to defraud individuals of intangible, non-property rights, *e.g.,* a citizen's right to honest government. *Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987).

■ Federal law prohibits the use of the mails in the furtherance of a scheme to defraud. 18 U.S.C. § 1341. To prove mail fraud, the government must show that the defendant (1) intentionally participated in a scheme to defraud and (2) used the mails to execute the fraudulent scheme. *United States v. Hawkins,* 905 F.2d 1489, 1496 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991). Success of the scheme is not a necessary element of the offense. *United States v. Dynalectric Co.,* 859 F.2d 1559, 1576 (11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989).

■ To determine whether a conviction for mail fraud is consistent with *McNally,* this Court looks to the wording of the indictment and the jury instructions. *Dynalectric,* 859 F.2d at 1570. If these are expressed in such a way that the jury must have concluded that a defendant schemed to defraud a victim of a monetary or property right, then we will uphold the convictions. *Id.* at 1570–71. If the jury could have convicted a defendant of scheming to defraud a victim of a *McNally* intangible right, then we will reverse the convictions. *Id.*

Turning to the indictment, paragraphs two and three of Count Fifteen, the first mail fraud count, charged that the object of Dr. Hooshmand's scheme was to obtain money from insurers for services he did not perform. All of the other mail fraud counts incorporated these two paragraphs. To convict Dr. Hooshmand in accordance with the indictment, the jury would have to conclude that Dr. Hooshmand was engaged in a scheme to defraud the insurers of money. Accordingly, the indictment complies with *McNally.*

■ We must next determine whether the jury instructions were consistent with *McNally.* When reviewing jury instructions, this Court determines whether the charges as a whole sufficiently instructed the jury so that it understood the issues involved and were not misled. *Everett v. Carnival Cruise Lines,* 912 F.2d 1355, 1358 (11th Cir.1990).

The challenged instructions are substantially similar to the instructions this Court upheld in *Dynalectric,* 859 F.2d at 1573.[5] As in *Dynalectric,* the jury was instructed that it was required to find a scheme to defraud money or property. *Id.* "Or equal importance is that the jury was *not* instructed on the intangible rights theory." *Id.* Finally, the court instructed the jury that the government had to prove a scheme to defraud that was "substantially the same as the one alleged in the indictment." As we have noted, the indictment alleged a scheme to defraud the insurance companies of money. Accordingly, we find that the mail fraud counts withstand Dr. Hooshmand's *McNally* challenge. *Id.*

### B. *Due Process*

Dr. Hooshmand argues that the definition of consultation used by Medicare and private insurers is so broad that his consultation claims fell within that definition. In the alternative, he claims that the definition of consultation is so vague that criminal prosecution for falsely submitting such a consultation claim violates due process.

■ Blue Cross was the Federal Government's exclusive agent in processing Medicare claims in Florida. The Blue Cross

---

**5.** Moreover, the defendants in *Dynalectric* presented an even stronger *McNally* challenge than Dr. Hooshmand does here. The indictment in *Dynalectric,* 859 F.2d at 1573, alleged a scheme to defraud a *McNally* intangible right.

Manual defined a consultation as a request for services by a physician or an agency. This definition is not vague; it is plainly evident from the language. Dr. Hooshmand received no requests from either physicians or agencies for the consultations that form the basis of the Medicare fraud counts. The government presented overwhelming evidence that Dr. Hooshmand knew and understood Blue Cross' claim procedures and terms. Dr. Hooshmand sent his employees to Blue Cross seminars on claim processing. FBI Agent Thuman testified that he found the Blue Cross Manual in Dr. Hooshmand's office. This evidence is sufficient to support Dr. Hooshmand's convictions for fraudulently billing Medicare for consultations.

■ Dr. Hooshmand's consultation claims to private insurers, however, represent a slightly different question. It would have been appropriate for Dr. Hooshmand to consult the private manuals instead of the Blue Cross Manual for the definition of consultation for claims to private insurers.[6] The private manuals define consultation as a request for an examination by "a physician or other appropriate source." Dr. Hooshmand's expert on Medicare billing, as well as other physicians, testified that "other appropriate source" included self-referrals by patients, referrals by a patient's neighbor or friends, even referrals from a patient selecting a physician from the phone book. Blue Cross' legal counsel admitted that she had never seen "other appropriate source" defined. Dr. Hooshmand argues that his consultation billings to private insurers fell within the private manuals' definition of consultation. Moreover, he claims that "other appropriate source" is so vague that criminally prosecuting him for falsely submitting a consultation claim to private insurers violates due process.

■ To establish that a statute is void for vagueness on due process grounds requires a showing that the statute is so vague that persons " 'of common intelligence must necessarily guess at its meaning and differ as to its application.' "

United States v. Mena, 863 F.2d 1522, 1527 (11th Cir.), cert. denied, — U.S. —, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989) (quoting Connelly v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). In Papichristou v. Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), the Supreme Court stated that "greater leeway is allowed" in the field of regulatory statutes governing business activities. More importantly, we find the definition of consultation no more vague than other ordinances upheld by the Supreme Court. See Village of Hoffman Estates v. Flipside, 455 U.S. 489, 501, 102 S.Ct. 1186, 1194, 71 L.Ed.2d 362 (1982) (holding constitutional ordinance requiring licensing for the sale of products "designed or marketed for use" with illegal drugs); United States v. Nat'l Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) (holding statute making it a crime to sell goods at "unreasonably low prices for the purpose of destroying competition or eliminating a competitor" is not unconstitutionally vague as applied to sales made below cost without any legitimate commercial objective and with specific intent to destroy competition). As noted above, a conviction for mail fraud requires the government to show that the defendant intentionally participated in a scheme to defraud through the use of the mails. Hawkins, 905 F.2d at 1496. Dr. Hooshmand's staff testified that Dr. Hooshmand instructed them to address consultation reports to doctors who never requested them, to place copies of these reports in patients' files, and then to destroy the originals. Dr. Hooshmand's expert conceded that she had never heard of a record-keeping practice like Dr. Hooshmand's. Moreover, Dr. Hooshmand's expert admitted that the copies of the letters to physicians could be used to satisfy a private insurance claim adjuster seeking documentation of a consultation claim. This evidence is more than sufficient for the jury to conclude that Dr. Hooshmand was consciously scheming to defraud private insurers by creating the

---

**6.** This is so even though Hooshmand used the same HCFA form to present his claims to private insurers that he used for his Medicare claims.

impression that the doctors to whom the reports were addressed had actually requested the consultations for which he was billing. Accordingly, we do not find the definition of consultation unconstitutionally vague as applied to Dr. Hooshmand's conduct.

### C. *Sufficiency of the Evidence*

Sufficiency of the evidence is a question of law which this Court reviews *de novo*. *United States v. Kelly*, 888 F.2d 732, 739 (11th Cir.1989). This Court examines the evidence, including all reasonable inferences and credibility choices, in the light most favorable to the government. *Id.* at 740. The inquiry is whether a factfinder could find that the evidence establishes guilt beyond a reasonable doubt. *Id.* The Court need not exclude every reasonable hypothesis of innocence or find guilt to be the only reasonable conclusion. *Id.*

Dr. Hooshmand argues that the evidence supporting the convictions for false EMG billing was insufficient. He argues that the government failed to rule out the possibility that surface electrodes instead of needles were used to perform the EMG tests and that the patient witnesses were not credible.

An EMG requires a needle to be inserted into the muscle. The insertion of the needle generally causes considerable pain. Patients generally remember the pain unless they have severe nerve problems. Occasionally, surface electrodes instead of needles are used where detection of gross movement is sufficient for diagnosis, *e.g.*, Parkinson's disease. However, a needle exam is most common.

Each of the patient-witnesses testified about the tests performed on them by Dr. Hooshmand and his technicians. Their accounts of procedures utilized contradicted the customary EMG procedures described above. None of the patients had nerve damage so severe as to render them incapable of feeling or recalling the pain associated with an EMG test. Therefore, the jury could reasonably infer that the tests were never conducted. Although one witness apparently suffered from occasional hallucinations, the question of the capacity and credibility of these witnesses to recall the procedures is properly a question for the jury. *United States v. McRary*, 616 F.2d 181, 183 n. 1 (5th Cir.1980), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2306, 73 L.Ed.2d 1307 (1982).[7]

There was also testimony that Dr. Hooshmand ordered his staff to schedule tests on patients and mark EMGs on charge sheets before he had even examined the patients. Finally, neither of the technicians who assisted Dr. Hooshmand in giving the EMGs testified about ever performing the EMG or observing one performed with surface electrodes. This evidence was sufficient to sustain Dr. Hooshmand's convictions on the EMG claims.[8]

### D. *Jury Instructions*

When reviewing jury instructions, this Court determines whether the charges as a whole sufficiently instructed the jurors so that they understood the issues involved and were not misled. *Everett*, 912 F.2d at 1358.

At trial, the district court instructed the jurors that, if they found beyond a reasonable doubt that Dr. Hooshmand consciously avoided learning that he should not bill for a consultation without an actual referral from a physician, then they could treat such avoidance as the equivalent of knowledge. The court denied Dr. Hooshmand's objection that this instruction lacked an evidentiary foundation.

---

**7.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

**8.** Dr. Hooshmand also argues that the government failed to prove that the allegedly fraudulent claims were not the result of clerical error by his staff. Dr. Hooshmand's current and former employees testified that Dr. Hooshmand had final control of all decisions in his office, including filing insurance claims. This evidence is sufficient for the jury to find that Dr. Hooshmand was responsible for the filing of false claims.

Citing *Lyle v. Bentley*, 406 F.2d 325 (5th Cir.1969), Dr. Hooshmand argues that such an instruction is reversible error because it presents the possibility that the jury may have decided the case on a basis for which there is no evidence. He claims that the problem is particularly acute in the instant case because the jury may have convicted him on the basis of negligent ignorance.

▮ To justify a conscious avoidance instruction, the facts must " 'point in the direction of deliberate ignorance.' " *United States v. Aleman*, 728 F.2d 492, 494 (11th Cir.1984) (quoting *United States v. Batencort*, 592 F.2d 916, 918 (5th Cir. 1979)).

Dr. Hooshmand's defense at trial was to point to the "other appropriate source" language in the private manuals and claim that his consultation billings fell within the meaning of this language or, alternatively, that this language was void for vagueness. Given the availability of the billing guides, as well as the Blue Cross seminars on billing, Dr. Hooshmand's failure to discover that "other appropriate source" did not include self-referrals by patients warranted the district court's instruction on conscious avoidance. *See United States v. Gold*, 743 F.2d 800, 822 (11th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985) (approving conscious avoidance instruction where entire defense rested on the argument that the defendants were "innocently oblivious to the endemic fraud that permeated" their business).

▮ Dr. Hooshmand also claims that the district court erred when it refused to give his requested instruction that "each charge and the evidence related to it should be considered separately." Instead, the court charged "A separate crime or offense is charged in each count of the indictment. The fact that you may find the defendant guilty or not guilty as to one of the offenses should not affect your verdict as to any other offense charged."

▮ A trial court's refusal to give a requested instruction is reversible error only if (1) the substance of the instruction was not covered in an instruction given, (2) the requested instruction is a correct statement of the law, (3) the requested instruction deals with an issue properly before the jury, and (4) the party seeking the requested instruction suffered prejudicial harm by the court's refusal. *Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1542 (11th Cir. 1989).

The court's instruction was sufficient to protect Dr. Hooshmand from having a guilty verdict on one count affect the remaining counts. The fact that the jury acquitted the defendant on seven counts supports the conclusion that the jury considered each count separately. *Cf. United States v. Caporale*, 806 F.2d 1487, 1511 (11th Cir.1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 763 (1987) (the fact that a jury acquitted members of a conspiracy of different counts supports the conclusion that the jury made individualized determinations as to each defendant). Finally, as detailed above, the government presented patient-witnesses who testified regarding each count. In light of this evidence, Dr. Hooshmand has failed to show the requisite prejudice. *See Dempsey*, 876 F.2d at 1542.

E. *The Adequacy of the Medicare Fraud Counts of the Indictment*

▮ Dr. Hooshmand argues that the Medicare fraud counts suffer from a fatal defect because they fail to allege that he presented false or fraudulent claims to a federal agency, thereby omitting an essential element of an offense under 18 U.S.C. § 287.[9] Because Dr. Hooshmand raises this argument for the first time on appeal, this Court "must find the indictment sufficient 'unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted.' " *United States v. Chilcote*, 724 F.2d 1498, 1504–05 (11th Cir.), *cert. denied*,

---

**9.** Section 287 makes it a crime to present "to any department or agency [of the U.S.] any claim upon or against the United States, know-

ing such claim to be false, fictitious, or fraudulent ..." 18 U.S.C. § 287.

467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984) (quoting *United States v. Trollinger,* 415 F.2d 527, 528 (5th Cir.1969) (per curiam)).

Count one of the indictment alleged that Dr. Hooshmand presented to Blue Cross a fraudulent claim upon the United States by seeking payment for medical services he never performed. It is reasonable to construe the allegation that Dr. Hooshmand presented a claim to Blue Cross, which the indictment identified as an agent of HHS, as a charge that Dr. Hooshmand presented a false claim to an agency of the United States. This reading is supported by *United States v. Catena,* 500 F.2d 1319 (3rd Cir.), *cert. denied,* 419 U.S. 1047, 95 S.Ct. 621, 42 L.Ed.2d 641 (1974), which upheld convictions for violating Section 287 where the evidence established that the defendant caused Blue Cross to submit false claims to HHS' predecessor agency, the Department of Health, Education, and Welfare.[10] This Court has repeatedly stated that "practical, rather than technical, considerations govern the validity of an indictment. Minor deficiencies that do not prejudice the defendant will not prompt this Court to reverse a conviction." *Chilcote,* 724 F.2d at 1505.

### F. *The Motion to Suppress*

◼ The district court denied, without a hearing, Dr. Hooshmand's motion to suppress evidence obtained via a government search warrant. Dr. Hooshmand argues that the district court erred because there was insufficient probable cause to issue the warrant.

◼ This Court reviews the denial of a motion to suppress as a mixed question of law and fact. The appellant must demonstrate that the district court's findings of fact are clearly erroneous, but this Court reviews the application of the law to those facts *de novo. United States v. Alexander,* 835 F.2d 1406, 1408 (11th Cir.1988). We construe the facts in the light most favorable to the party who prevailed below. *Id.*

◼ To find probable cause, the magistrate must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). According to the government, its affidavit contained information from five of Dr. Hooshmand's former employees who described fraudulent billing practices by Dr. Hooshmand. Dr. Hooshmand complains that this information was uncorroborated. In this case, however, the five informants corroborated each other.

Dr. Hooshmand also complains that the information was stale because it was eleven months between the time the last employee-informant left Dr. Hooshmand's employ and the issuance of the warrant. When the alleged criminal activity is ongoing, however, it is unlikely that the passage of time will dissipate probable cause. *United States v. Domme,* 753 F.2d 950, 953 (11th Cir.1985). The informants, who worked for Dr. Hooshmand from 1977 to 1984, described fraudulent activities allegedly practiced by Dr. Hooshmand throughout this period. This evidence is sufficient to establish the likelihood that the fraud was a part of an ongoing scheme and that

---

**10.** Hooshmand notes correctly that *Catena* did not involve a challenge to the indictment. A reading of the case, however, suggests that the underlying theory of the government was that Blue Cross was the equivalent of a government agency. Moreover, the cases Dr. Hooshmand cites are distinguishable. In *United States v. Huff,* 512 F.2d 66, 68–69 (5th Cir.1975), the former Fifth Circuit found that count one of an indictment that alleged a controlled substance violation involving "3, 4 methylenedioxy amphetamine" was acceptable while count two was unacceptable because it omitted the "3, 4" language. The former Fifth Circuit noted that methylenedioxy amphetamine was a legal substance in its own right unlike 3, 4 methylenedioxy amphetamine. In *United States v. Leigh,* 487 F.2d 206 (5th Cir.1973), the former Fifth Circuit affirmed the dismissal of a count which alleged that a physician "distributed" a controlled substance but failed to allege that he "dispensed" a controlled substance as the statute requires because Congress had passed a different statute than the one cited in the indictment criminalizing the distribution.

the evidence of the fraud was not stale. Accordingly, there was sufficient evidence to find probable cause.

■ Dr. Hooshmand also argues that the non-Medicare files of two patients, Leo Hayes and Darrell Shafranski,[11] were not covered by the search warrant and therefore should have been suppressed. Hayes' medical file, however, lists Medicare as his second insurance company. Therefore, it was properly seized under the warrant. The seizure of Shafranski's file was appropriate because it refers to medical tests by technicians where Dr. Hooshmand is listed as the doctor, thereby falling within the scope of the warrant.[12]

G. *Admission of Extrinsic Act Evidence*

■ Dr. Hooshmand contends that the district court erred in admitting testimony by his former employees of the following extrinsic acts: (1) his alleged alteration of test results in Maxine Burkett's file; (2) his alteration of hospital records before a Medicare audit; (3) the destruction of the originals of the consultation letters to doctors placed in patient files; (4) his instruction to his staff to schedule certain tests for certain complaints automatically before he had even seen the patients; (5) his instruction to technician Robert Henderson to list the tennis lessons he gave Dr. Hooshmand in the EMG log book because Henderson was paid the same amount for a tennis lesson as for administering an EMG.

■ This Court reviews the decision to admit extrinsic act evidence under Fed. R.Evid. 404(b) for "clear abuse of discretion." *United States v. Eirin,* 778 F.2d 722, 731 (11th Cir.1985). Before admitting such evidence, this Court requires the government to show that (1) the evidence is relevant to an issue other than a defen-

dant's character and (2) the probative value of the evidence outweighs any prejudicial effect. *United States v. Dothard,* 666 F.2d 498, 501 (11th Cir.1982). Moreover, such evidence is admissible only if the jury could reasonably find by a preponderance of the evidence that the defendant committed the extrinsic act. *Huddleston,* 485 U.S. 681, 690, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988).

■ Extrinsic act evidence is especially relevant when the government has, as it did here, the burden to prove the defendant's intent to commit the charged offense. *United States v. Cardenas,* 895 F.2d 1338, 1342 (11th Cir.1990). Such evidence is also admissible to show a defendant's ability and experience to execute a fraudulent scheme. *United States v. Garcia,* 880 F.2d 1277, 1278 (11th Cir.1989) (per curiam). All of the extrinsic act evidence was relevant for these two purposes. Moreover, the government presented sufficient evidence to meet the *Huddleston* hurdle. The testimony describing the extrinsic acts came from individuals who were employed by Dr. Hooshmand at the time he allegedly committed the acts. Thus, the district court did not abuse its discretion by admitting such evidence.

H. *The Denial of Dr. Hooshmand's Post–Trial Request to Interview Jurors*

■ Dr. Hooshmand argues that the district court violated his First and Sixth Amendment rights when it denied his motion to interview jurors after the trial about possible improper influences on their verdict. Local Rule 16 E of the Southern District of Florida provides that a lawyer is to avoid communicating with jurors on any subject unless, after the jury has been discharged and upon a showing of good cause, the district court grants the lawyer permis-

---

**11.** These records provided the evidentiary grounds for Counts Eighteen and Twenty respectively.

**12.** Hooshmand claims the magistrate should have restricted the warrant to the patient files identified in the affidavits. This Court has held that "in cases involving a pervasive scheme to defraud, all the business records of the enter-

prises may properly be seized." *United States v. Sawyer,* 799 F.2d 1494, 1508 (11th Cir.1986), *cert. denied,* 479 U.S. 1069, 107 S.Ct. 961, 93 L.Ed.2d 1009 (1987) (per curiam) (refusing to limit warrant to the 25 transactions described in the affidavits). Accordingly, this argument is meritless.

sion to interview jurors to determine whether the verdict is subject to legal challenge. Dr. Hooshmand contends that the rule operates as an unconstitutional prior restraint.

In a post-trial interview, juror Dorothy Roy stated, "I voted for [the verdict], but it was not my verdict.... I had no choice. It was 11 to 1. It had to be unanimous.... They wanted to get on with other trials." Roy added that there were "things" that she did not want published until the trial judge made his decision, but she gave no indication what these were.

This Court has held that a district court's refusal to permit juror interviews will be reversed only upon a showing of abuse of discretion. *See United States v. Cuthel*, 903 F.2d 1381, 1382 (11th Cir.1990). In *Cuthel*, this Court upheld a district court's authority, under the very same rule at issue in this case, to refuse permission to defense counsel to interview jurors on grounds similar to these. *Id.* at 1382–83 (holding phone call to defendant from purported juror saying "we were pressured into making our decision" inadequate to permit juror interview); *see also O'Rear v. Fruehauf Corp.*, 554 F.2d 1304 (5th Cir. 1977); *United States v. Riley*, 544 F.2d 237, 242 (5th Cir.1976), *cert. denied*, 430 U.S. 932, 97 S.Ct. 1554, 51 L.Ed.2d 777 (1977). Dr. Hooshmand's allegation of improper extraneous influence is weaker than the allegations in these cases. Moreover, in *United States v. Griek*, 920 F.2d 840, 843 (11th Cir.1991), this Court held that Local Rule 16 E did not violate the First Amendment. Furthermore, the facts alleged by Hooshmand are insufficient to raise a Sixth Amendment claim. *See id.* at 844. Accordingly, the district court did not err when it refused to permit defense counsel to interview the jurors.

### I. Fines Under 18 U.S.C. § 3623

■■■ As part of the sentence, the district court ordered restitution of $3,101.24 and imposed a fine of $250,000. Dr. Hooshmand concedes that 18 U.S.C. § 3623 authorized the district court to impose a fine of $250,000. He argues, however, that 18 U.S.C. § 3622 required the district court to make specific factual findings before imposing the fine.[13] Section 3622 requires a court to consider nine enumerated factors when imposing a fine.[14] This Court has not, however, determined whether the statute requires a court to make specific factual findings when imposing a fine.

■■■ The interpretation of a statute is a question of law subject to *de novo* review. *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 157 (11th Cir.1990). A sentence that falls within statutory limits, however, is reviewed for abuse of discretion. *United States v. Ard*, 731 F.2d 718, 727 (11th Cir.1984).

Dr. Hooshmand correctly notes that the Fourth Circuit has held that the use of the word "shall" in Section 3622 requires the district court to make specific factual findings for each of the nine factors enumerated in the statute. *See United States v. Harvey*, 885 F.2d 181, 182–183 (4th Cir. 1989). The Eighth and Ninth Circuits have held, however, that a court is not required to make oral or written findings regarding these factors. *See United States v. Weir*, 861 F.2d 542, 545 (9th Cir.1988), *cert. denied*, 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989); *United States v. Condon*, 816 F.2d 434, 435–36 (8th Cir.1987).

---

**13.** The Comprehensive Crime Control Act of 1984, Pub.L. 98–473, repealed both sections, effective November 1, 1987. The district court sentenced Hooshmand on October 23, 1987.

**14.** The factors listed in Section 3622 are: (1) the nature and circumstance of the offense; (2) the history and characteristics of the defendant; (3) the defendant's income, earning capacity, and financial resources; (4) the burden that the fine will impose on the defendant and the defendant's dependents; (5) the pecuniary loss suffered by others as a result of the defendant's actions; (6) the amount of restitution, if any; (7) the need to deprive the defendant of any illegally obtained gains from the offense; (8) whether the defendant can pass on to consumers or others the expense of the fine; and (9) if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline the official or employee responsible for the offense. 18 U.S.C. § 3622.

The plain language of Section 3622 states only that the district court "shall consider" the listed factors. The statute does not state that the court shall make factual findings. In *United States v. Hairston*, 888 F.2d 1349, 1352 (11th Cir.1989), this Court analyzed the "shall consider" language of 18 U.S.C. §§ 3579(a), 3580(a) of the Victim and Witness Protection Act ("VWPA").[15] Relying on the "shall consider" language of Section 3580, this Court refused to adopt a rigid rule requiring district courts to make findings of fact whenever they impose an order of restitution. *Id.* Rather, we held that no specific findings are necessary so long as the record is adequate for this Court to review the district court's restitution order. *Id.* at 1353. In so holding, we rejected the analysis of the Fourth Circuit in *United States v. Bruchey*, 810 F.2d 456, 458 (4th Cir.1987), which was the basis of the Fourth Circuit's decision in *Harvey, supra.* After examining the record in this case, we hold that it is sufficient to support the fine imposed by the district court.

### J. *Jencks Act Motion*

 Prior to oral argument, Dr. Hooshmand submitted a motion to this Court seeking a ruling that the government violated its duties under the Jencks Act, 18 U.S.C. § 3500, by failing to produce handwritten notes from an interview with government witness Hattie Sullivan once Ms. Sullivan had testified on direct examination.

Once a government witness has testified on direct examination, Section 3500 requires the government to produce, on motion by the defendant, any statement of the witness which relates to the subject matter to which the witness has testified. 18 U.S.C. § 3500(b).

We have reviewed the handwritten notes from the government's interview of Hattie Sullivan. We find that these notes do not represent a "statement" as defined by 18 U.S.C. § 3500(e). There is no evidence that

the notes were adopted by Ms. Sullivan and they do not represent any sort of recording of any statements made by Ms. Sullivan. *See United States v. Martino*, 648 F.2d 367, 387 (5th Cir. June 1981), *aff'd sub nom. on other grounds*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). Moreover, a review of the trial transcript reveals that Dr. Hooshmand's counsel made no motion to the district court seeking production of these notes as required by 18 U.S.C. § 3500(b). Finally, our review of the notes reveals that they contain no impeaching material and therefore Dr. Hooshmand suffered no prejudice by his counsel's lack of access to these notes during cross-examination of Ms. Sullivan. Accordingly, we deny Dr. Hooshmand's motion to compel disclosure of the government's notes from its interview with Hattie Sullivan.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Dr. Hooshmand's convictions on all counts.

---

**15.** Section 3579(a)(2) states that if a "court does not order restitution, or orders only partial restitution ... the court shall state on the record the reasons therefor." Section 3580(a) states the court "shall consider" a list of factors when determining whether to order restitution.