[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 17, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-11447
Non-Argument Calendar

_____

D. C. Docket No. 06-00592-CR-5-UWC-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEVE EARL LANGFORD,
a.k.a. John Alden Langford,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 17, 2009)

Before CARNES, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Steve Earl Langford was convicted of seven drug possession and trafficking offenses and two firearm offenses. Langford contends that the district court erred when it applied the good faith exception to the exclusionary rule and denied his motion to suppress evidence. That is the only issue he raises in this appeal.

At the suppression hearing a magistrate judge heard testimony from Agent Mike Leftwich, who became involved in the investigation of Langford in 1999. During the investigation, Leftwich had made controlled buys of cocaine from some of Langford's regular customers. Leftwich worked with a female informant who made controlled buys directly from Langford at his house until December 2003. The 2004 search warrant affidavit stated that a confidential informant had made controlled purchases of drugs at Langford's house at 210 Victory Lane and that the informant had seen handguns, large sums of money, and drug packaging materials inside that house. It also stated that Langford had a prior drug offense conviction and that his house was surrounded by fences.

Based on that affidavit, City of Huntsville warrant magistrate Scott Rogers signed a search warrant on September 27, 2004. No search was conducted. Leftwich later testified that there was a delay because his supervisors in the police department believed that Langford was too dangerous for the warrant to be executed until Langford was in custody. An arrest warrant for Langford was also

issued at about the same time as the search warrant based on allegations of drug sales to a confidential informant.

Agent Leftwich testified that law enforcement spent the next year trying to arrest Langford outside of his home. They finally got the chance in September 2005. During a traffic stop, one passenger ran from the car and evaded police officers. Another man in the car identified himself as "John Langford," an alias that Steve Earl Langford used. He gave his address as 219 Victory Lane, which the officers knew was false. After Langford was arrested, Leftwich contacted Warrant Magistrate Rogers, who issued a new search warrant for Langford's house.

The affidavit in support of the new search warrant contained all of the same information as the 2004 warrant along with new information about the traffic stop. It referred to ongoing drug trafficking activities, Langford's gang affiliation, and his history as a drug offender. Leftwich took the affidavit and a warrant to Magistrate Rogers, who had signed the 2004 search warrant. Under oath, he discussed the Langford investigation with Rogers and told him about the traffic stop. Leftwich inadvertently had left the 2004 date on the warrant, and Rogers scratched through it and wrote in the correct date of September 1, 2005. Rogers signed the warrant, and Leftwich executed it.

After a grand jury indicted Langford on gun and drug charges, he moved to suppress the evidence found during the search of his house pursuant to the warrant, contending that the information on which the warrant was based was stale. After the suppression hearing, the magistrate judge issued a report and recommendation finding that there were some "obvious problems" with the search warrant affidavit. Specifically, it lacked the details necessary to establish that its information contained was not stale and that the confidential informants who had made the controlled drug buys were reliable.

The magistrate judge's report found that Agent Leftwich had acted in good faith and that Leftwich believed he had sufficiently updated the warrant with new information about Langford's involvement in drug trafficking. It also found no evidence that anything in the warrant was false or that Leftwich had tried to mislead the warrant magistrate. Based on the totality of the circumstances, the magistrate judge concluded that the warrant affidavit was not so lacking in probable cause that belief in its existence was entirely unreasonable. The magistrate judge concluded that the affidavit failed to establish probable cause for the warrant but that the good faith exception established by United States v. Leon, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984), applied. The district court adopted the magistrate judge's report and recommendation.

4

"We review de novo the legal issue as to whether the <u>Leon</u> good faith exception to the exclusionary rule applies . . . ." <u>United States v. Martin</u>, 297 F.3d 1308, 1312 (11th Cir. 2002). However, Langford did not object to the magistrate judge's report and recommendation, so we review the fact findings in that report only for "plain error or manifest injustice." <u>See</u> <u>United States v. Warren</u>, 687 F.2d 347, 348 (11th Cir. 1982).

<u>Leon</u> "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." <u>Martin</u>, 297 F.3d at 1313. We have explained the <u>Leon</u> good faith exception as follows:

> The <u>Leon</u> good faith exception applies in all but four limited sets of circumstances. The four sets of circumstances are as follows: (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" <u>Lo-Ji Sales, Inc. v. New York</u>, 442 U.S. 319, 99 S. Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient—<u>i.e.</u>, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

<u>Id.</u> (quoting <u>Leon</u>, 468 U.S. at 923, 104 S. Ct. 3405). Langford contends that the

5

first and third sets of circumstances apply here and make the <u>Leon</u> good faith exception inapplicable.

As to the first Langford argues that Agent Leftwich misled the warrant magistrate by failing to inform him that all but the last paragraph of the affidavit was based on information obtained nearly two years earlier. He asserts that the omitted information was crucial because the magistrate would not have issued a search warrant based only on stale information and the automobile stop.

The record contains no evidence that the information provided in the affidavit was false or that Agent Leftwich tried to mislead the warrant magistrate. Magistrate Rogers had signed the 2004 warrant and was already familiar with the case. The record shows that he placed Agent Leftwich under oath, and they discussed the entire investigation. Rogers then reviewed the warrant and affidavit and corrected the date on the warrant before signing. Accordingly, the magistrate judge's findings of fact about the information Leftwich provided to Rogers were not plainly in error. <u>See</u> <u>Warren</u>, 687 F.2d at 348. Based on the totality of the circumstances, the magistrate judge correctly found that Leftwich reasonably believed that probable cause existed to execute a search warrant. <u>See</u> <u>Martin</u>, 297 F.3d at 1320.

Langford also contends that the affidavit was so lacking in probable cause

6

that belief about its validity was entirely unreasonable.   He argues that there is no indication in either the affidavit or the suppression hearing transcript that Leftwich believed he had updated the warrant with current information about Langford's continued involvement with drug trafficking.  Moreover, he argues there was no proof of the credibility, reliability, or basis of knowledge of the individuals who provided information about the drug trafficking.  He argues that without any reference to the time or dates of Langford's alleged drug sales, the affidavit obviously lacked probable cause.

"[W]e look to the face of the particular affidavit at hand in order to determine whether the warrant is so devoid of probable cause that [an officer's] belief in its validity at the time it was issued was entirely unreasonable." Martin, 297 F.3d  at 1313.  We consider whether the affidavit "establish[es] a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity. Id. at 1314. "The information in the affidavit must also be fresh." Id.

> There is no bright-line rule for what constitutes fresh information:
>
> When reviewing staleness challenges we do not apply some talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate, rather, we review each case based on the unique facts presented.  In this case-by-case determination we may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused,

7

character of the items sought, and nature and function of the premises to be searched. Ultimately, however, even stale information is not fatal if the government affidavit updates, substantiates, or corroborates the stale material.

United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994) (citations omitted). We have also held that "[w]hen the alleged criminal activity is ongoing . . . it is unlikely that the passage of time will dissipate probable cause." United States v. Hooshmand, 931 F.2d 725, 735 (11th Cir. 1991). Here, the affidavit alleged that the criminal activity was ongoing, that it was occurring at Langford's house, and that Langford was directly involved in it. Leftwich testified that after the first warrant was signed, he continued to receive information about Langford's drug trafficking. Leftwich referred to that information in the affidavit but simply neglected to include the dates the information was received.

Similarly, in light of all of the evidence and the details provided in the warrant affidavit, the references to confidential informants satisfied the requirements for reliability. We have stated that "[i]f an informant is mentioned in the affidavit, the affidavit must also demonstrate the informant's 'veracity' and 'basis of knowledge.'" Martin, 297 F.3d at 1314. That requirement is met, however, when other circumstances independently corroborate the information provided. Id. (". . . When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the

8

informant.") (quotation marks and alteration omitted). When he applied for the second search warrant, Leftwich informed Rogers about the details of the ongoing investigation, including additional information he had received that corroborated earlier information about Langford's drug trafficking activities. The <u>Leon</u> good faith exception was properly applied.

**AFFIRMED.**