**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas Charles GRIEK,
Defendant–Appellant.**

No. 88–5659.

United States Court of Appeals,
Eleventh Circuit.

Jan. 10, 1991.

delaying the filing of his initial brief pending completion of the record. This Court has now published its decision in that first appeal and it appears as *United States of America v. William James Cuthel, Dade Frank Sokoloff, Wilbur Harwood Hoover, Jay William Marden,* 903 F.2d 1381 (11th Cir.1990). A petition for rehearing and suggestion for rehearing en banc filed in that case has now been denied.

We, therefore, consider in this appeal only the one issue that we did not decide in the *Cuthel* case, *supra.* That issue is whether the trial court's denial of Griek's motion requesting the trial court to hold a post-verdict hearing to examine jurors as to alleged jury misconduct and his motion to grant defense counsel permission to interview the jurors concerning such alleged jury misconduct violated his constitutional rights.

Joseph Beeler, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Myles H. Malman, Linda C. Hertz, Carol E. Herman, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from a judgment of conviction and sentence of appellant on several counts of violating the narcotics laws of the United States. Griek was tried jointly in the district court with four co-defendants, all of whom were also found guilty on some of the counts. These co-defendants appealed the district court's judgment, at a time when Griek, the appellant here, had obtained from this Court an order

## I. FACTS BEARING ON THIS ISSUE

On the day following the return of the jury verdict, Griek's co-defendant Marden claimed, in a motion filed with the district court, that he received a telephone call from an anonymous female who called him at home and stated: "We were pressed into making our decision and I want to let you know that I am sorry." Marden's motion requesting that the district court interview the jurors "to determine whether improper activity occurred in the jury room" was supported by Marden's affidavit.

Three days later, the assistant United States attorney who assisted in the prosecution received a letter from an alternate juror who complimented him extravagantly on his trial performance and commented on his attire.[1] The prosecutor showed this letter to this trial judge and it was made a part of the record. Griek joined in Marden's motion to have the court interview the jurors, citing the letter as additional evidence of possible juror misconduct. Also, Griek filed a separate "motion to interview jurors and for related relief."

1. A copy of this letter is attached as an appendix to this Court's opinion in *U.S. v. Cuthel,* 903 F.2d 1381 (11th Cir.1990).

The trial court, in denying these two motions, stated to Griek's counsel:

> By your theory in every case where a jury has rendered a verdict a lawyer or party could say "I have a first amendment right to speak to the juror, and if you want to do it in a way that would preserve the integrity of the process, you bring them into court, Judge, and you have them interrogated in the presence of a court or magistrate.
>
> What would that leave with the secrecy of the petit jury deliberative process?"

Although it is clear that the trial court thus recognized the need to balance the First Amendment rights of the accused with a different important governmental policy, i.e., "the secrecy of the petit jury deliberative process" the court did not determine whether its action was constitutional because the only issue before it at the time, was whether Griek should be released on bond pending appeal and in that connection, the court merely had to determine whether it was reasonably likely that Griek would prevail on that issue on appeal.

## II. DISCUSSION

The question here is whether, as contended by appellant, he has the constitutional right either under the First or Sixth Amendment to the Constitution either to interview jurors for the purpose of possible challenge to their verdict or to require the court to hold a hearing to require juror testimony for the same purpose.

(1) Griek's First Amendment claim challenges the constitutionality of local rule 16(E) of the Southern District of Florida and, in effect, of the Federal Rule of Evidence 606(b).

This rule provides as follows:

> (b) *Inquiry into validity of verdict or indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from a verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror....

Local rule 16(E) of the Southern District of Florida provides for jury polling "after the jury has been discharged, upon application in writing and for good cause shown ... to determine whether the verdict is subject to legal challenge."

■ We construe the local rule in light of the Federal Rules of Evidence. In other words, good cause under the local rule may be shown only by satisfying the requirements of the exception stated in the Federal Rule.

In his appeal, Griek claims that the rule is unconstitutional on its face. He contends that this is a prior restraint of the right of a defendant in a criminal case which abridges "... the right of the people peaceably to assemble, and to petition the government for a redress of grievances." Amend. 1, U.S. Constitution.

■ Assuming, but not deciding, that the "redress of grievances" language of the First Amendment comprehends the right of counsel to question a juror for the purpose of impeaching his or her verdict, that does not end our inquiry.

This Court has recently considered the need for balancing the First Amendment right with the Sixth Amendment right of a criminal defendant to a fair trial by an impartial jury. In that case, *United States of America v. Manuel Antonio Noriega, Defendant–Appellee, Cable News Network, Inc. & Turner Broadcasting Systems*, 917 F.2d 1543 (1990), we cited *Nebraska Press Association v. Stuart*, 427 U.S. 539, 570, 96 S.Ct. 2791, 2808, 49 L.Ed.2d 683 (1976). In that case, the Court stated: "... This Court has frequently denied that First Amendment rights are absolute and has consistently rejected that a prior restraint can never be employed."

Thus, it becomes necessary for the court to determine whether the First Amendment protection outweighs other important government interests.

In *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1986), the Supreme Court described the governmental interest in preventing a juror from being required to testify to impeach a verdict. The Court stated:

> By the beginning of the century, if not earlier, the near universal and firmly established common law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict. *See* 8 J. Wigmore, Evidence § 2352 pp. 696–697 (J. Norton Rev. ed. 1961) (common law rule, originating from 1785 opinion of Lord Mansfield, "came to receive in the United States an adherence almost unquestioned.")

> Exceptions to the common law rule were recognized only in situations in which an "extraneous influence" ... was alleged to have affected the jury.... In situations that did not fall into this exception for external influence, however, the Court adhered to the common law rule against admitting juror testimony to impeach a verdict. *McDonald v. Pless*, 238 U.S. 264 [35 S.Ct. 783, 59 L.Ed. 1300] (1915); *Hyde v. United States*, 225 U.S. 347, 384 [32 S.Ct. 793, 808, 56 L.Ed. 1114] (1912).

In *Pless*, 238 U.S. at 267, 35 S.Ct. at 784, the Court stated:

> The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial the Court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room.

> These two conflicting considerations are illustrated in the present case. If the facts were as stated in the affidavit, the jury adopted an arbitrary and unjust method in arriving at their verdict, and the defendant ought to have had relief, if the facts could have been proved by witnesses who were competent to testify to a proceeding to set aside the verdict. But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and be set by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.

*Id.* at 267, 268, 35 S.Ct. at 784.

Of course, permitting the jurors in this case to be questioned after their verdict could not affect the consideration they had given to their evidence here. The public policy, however, is broader than the effect such a proceeding would have on the trial jury at issue. In the *Tanner* case, the Supreme Court stated: "Substantial policy considerations support the common law rule against the admission of jury testimony to impeach a verdict." 483 U.S. at 119, 107 S.Ct. at 2747. The Court then referred to the above quotation from *McDonald* as stating the basis for the common law rule. This was to avoid a result that "would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference." 238 U.S. at 267, 268, 35 S.Ct. at 784. It is thus clear that the compelling government interest to be protected in a case such as this is the right of criminal defendants to be tried by a jury whose deliberations cannot be exposed to public view except by a showing of outside influence, the basis for the exception in Rule 606(b).

(2) As to Griek's claim that the trial court violated his Sixth Amendment rights, we agree with the appellee's statement that Griek failed to present any argument on this issue, and he has thereby abandoned the claimed error. In any event, we perceive no denial by the trial court's order of appellant's right to the effective assistance of counsel.

### III. CONCLUSION

The judgment is AFFIRMED.