**John RAPP, Plaintiff,**

**v.**

**DISCIPLINARY BOARD OF the HAWAII SUPREME COURT, the Honorable Justices of the Hawaii Supreme Court Ronald T.Y. Moon, Steven H. Levinson, Robert G. Klein, Paula A. Nakayama, Mario R. Ramil, Thomas F. Schmidt, and Lorinna J. Schmidt, Defendants.**

**Civ. No. 95–00779 DAE.**

United States District Court,
D. Hawai'i.

Feb. 2, 1996.

John Rapp, Honolulu, HI, pro se.

Ann B. Andreas, Office of the Attorney General, State of Hawaii, Honolulu, HI, for defendants Disciplinary Board of the Hawaii Supreme Court, Ronald T.Y. Moon, Steven H. Levinson, Robert G. Klein, Paula A. Nakayama and Mario R. Ramil.

Thomas P. Dunn, Honolulu, HI, for defendants Thomas F. Schmidt and Lorinna J. Schmidt.

*ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION; GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING STATE DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, District Judge.

The court heard the parties' motions on January 16, 1996. Plaintiff John Rapp ("Rapp"), an attorney, appeared *pro se* at the hearing. Ann B. Andreas, Deputy Attorney General, appeared at the hearing on behalf of Defendants Disciplinary Board of the Hawaii Supreme Court, Hawaii Supreme Court Justices Ronald T.Y. Moon, Steven H. Levinson, Robert G. Klein, Paula A. Nakayama, and Mario R. Ramil (collectively "State Defendants"). Thomas Dunn, Esq., appeared at the hearing on behalf of Defendants Thomas F. Schmidt and Lorinna J. Schmidt ("Schmidts").[1] After considering the motion and supporting and opposing arguments relating thereto, the court holds that the Supreme Court of Hawaii may enact appropriate rules to restrict post-jury con-

tact by attorneys but declares that part (b) of Rule 3.5 of the Hawaii Rules of Professional Conduct as presently constituted is UNCONSTITUTIONAL, GRANTS Plaintiff's Motion for Preliminary Injunction, GRANTS Plaintiff's Motion for Partial Summary Judgment, and DENIES the State Defendants' Cross–Motion for Summary Judgment.

## BACKGROUND

Rapp filed his complaint in this action against Defendants on September 22, 1995 ("Complaint"). Rapp brings this suit to challenge the constitutionality of Rule 3.5 of the Hawaii Supreme Court Rules of Professional Conduct ("Rule 3.5").[2] Rapp seeks preliminary and permanent injunctions enjoining and restraining the State Disciplinary Board of the Supreme Court and the Justices of the Hawaii Supreme Court from enforcing or attempting to enforce Rule 3.5, and a declaratory judgment holding Rule 3.5 unconstitutional and unenforceable.[3] The State Defendants oppose Plaintiff's motions and have filed a Cross–Motion to Dismiss or for Summary Judgment.

The underlying facts of this case are not in dispute: Rapp was a *pro se* plaintiff in a State First Circuit Court proceeding, *Rapp v. Schmidt*, Civ. No. 94–0903, in which Thomas Schmidt and Lorinna Schmidt were named as defendants. The trial in that case commenced on July 31, 1995, and Rapp obtained a special verdict in his favor on August 25, 1995, and judgment was entered on August 29, 1995. *See* State Defendants' Statement of Facts, at ¶ 2. Additionally, the state court denied in part and granted in part Rapp's motion for a directed verdict. *Id.* at ¶ 4. On October 23, 1995, Rapp was awarded a supplemental judgment by the state court. *Id.* at ¶ 5. On November 23,

---

**1.** At the hearing, Dunn reported that the Schmidts had not been served in this action until December 22, 1995, and that he had been recently retained to defend them.

**2.** Rule 3.5 provides that:
A lawyer shall not:
(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law;

(b) communicate ex parte with such a person except as permitted by law; or
(c) engage in conduct intended to disrupt a tribunal.

**3.** On December 7, 1995, after a hearing, this court denied Rapp's Motion for Temporary Restraining Order.

1995, defendants in the State case, Thomas and Lorinna Schmidt, filed their notice of appeal to the Hawaii Supreme Court. *Id.* at 6.

Rapp alleges that prior to the return of the jury's verdict, he asked the Schmidts' attorney if the attorney would be willing to remain after the jury delivered its verdict to engage in communications with the jury. The attorney declined. According to Rapp, he then requested the trial judge, Judge Daniel G. Heely, to direct counsel for all parties to remain following return of the jury verdict in order to communicate with the jury, and Judge Heely denied his request.

Rapp contends that he now wishes to engage in communications with the jurors from his First Circuit Court case but is precluded from doing so by Rule 3.5(b). He claims that he desires to talk with the jurors for various purposes, including: (1) to thank the jurors for their service, attention, and their verdict, (2) to discuss with the jurors their thinking, reasoning, and reaction to the case and to Rapp's performance, (3) to explore the possibility of "extrinsic fraud," jury misconduct, error, or other grounds upon which the verdict might be called into question by the Schmidts, (4) to answer any questions the jurors might have, (5) for other "proper and legitimate" reasons not calculated to harass or embarrass jurors or to influence their actions in their actions in future jury service. Complaint, at ¶ 16. Rapp believes members of the jury would be willing to speak with him, but that he cannot talk with them because of the threat of suspension or disbarment from the Hawaii bar. In essence, he claims that Rule 3.5(b) is an unconstitutional prior restraint on his free speech rights.

## STANDARD OF REVIEW

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

■ In determining the sufficiency of an alleged jurisdictional basis, the plaintiff bears the burden of proof that subject matter jurisdiction does in fact exist. *Thornhill Pub. Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). Moreover, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material

facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983). In a motion to dismiss based upon lack of subject matter jurisdiction, the court may receive, among other forms of competent evidence, affidavits to resolve factual disputes without converting the motion to dismiss into one for summary judgment. *Sudano v. Federal Airports Corp.,* 699 F.Supp. 824, 825–26 (D.Haw.1988).

### II. Summary Judgment

■ Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. at 2513. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

The State Defendants move for dismissal of, or summary judgment in their favor on: (1) all claims for relief which relate specifically to Rapp's attempt to obtain an order from this court allowing him to contact discharged jurors in *Rapp v. Schmidt,* Civil No. 94–0903–03; (2) all claims for declaratory relief, on the grounds that the remedy should be upheld because Rule 3.5 is in the process of being modified; and (3) all claims alleging

that Rule 3.5 violates that the First Amendment of the United States Constitution.

## I. Eleventh Amendment

First, the State Defendants argue that this court lacks subject matter jurisdiction over Rapp's claims for injunctive relief, relying on the Eleventh Amendment doctrine of sovereign immunity. The Eleventh Amendment reads:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[4]

The United States Supreme Court has interpreted this Amendment to signify that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed[.]" *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Where state officials are the named defendants, the Eleventh Amendment bars the suit if " 'the state is the real, substantial party in interest.' " *Pennhurst,* 465 U.S. at 101, 104 S.Ct. at 908 (citing *Ford Motor Co. v. Dep't of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945)). "Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.' " *Id.* (citing *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1052–53, 10 L.Ed.2d 191 (1963)).

Moreover, a plaintiff may not sue a state in either law or equity. *Id.,* 465 U.S. at 100–101, 104 S.Ct. at 907–909 (citing *Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) ("the Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when those are asserted and prosecuted by an individual against a State")). Reading these two principles together, a suit against a state official

---

4. The Supreme Court has held that this provision bars suits against a state brought by its own citizens, as well as by foreign citizens. *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986).

that is in fact a suit against a State is barred regardless of whether the plaintiff seeks monetary or injunctive relief. *Id.*, 465 U.S. at 101–102, 104 S.Ct. at 908–909 (citing *Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982)).

The Supreme Court has recognized an exception to this general rule: a plaintiff may challenge the constitutionality of a state official's action by seeking prospective injunctive relief. *Id.*, 465 U.S. at 102, 104 S.Ct. at 909 (citing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). If the plaintiff asks the federal court to enjoin the official's future unconstitutional conduct, the Eleventh Amendment presents no bar, because unconstitutional actions by state officials cannot be authorized by a state. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, a plaintiff may not seek retroactive monetary relief against the state official for past allegedly unconstitutional behavior. *Id.* at 666–667, 94 S.Ct. at 1357–1358.

█ Simply asking for injunctive relief and not damages will not automatically allow the plaintiff to overcome the dictates of the Eleventh Amendment. The Supreme Court has recognized that the difference between retrospective and prospective relief "will not in many instances be that between day and night." *Papasan*, 478 U.S. at 278, 106 S.Ct. at 2940 (citing *Edelman*, 415 U.S. at 667, 94 S.Ct. at 1357–58). Generally, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred [by the Eleventh Amendment]." *Papasan*, 478 U.S. at 278, 106 S.Ct. at 2940.

Here, Rapp's 42 U.S.C. § 1983[5] claims against the State Defendants in their official capacities are in fact claims against the State of Hawaii. Hence, any liability attributed to them will bind the State, and the State will bear the consequences of judgment. The State is, therefore, the "real, substantial party in interest[,]" *Pennhurst*, 465 U.S. at 101, 104 S.Ct. at 908. Accordingly, the suit will be barred unless (1) the State of Hawaii has unequivocally waived its Eleventh Amendment immunity, or (2) Rapp seeks prospective injunctive relief.

█ Because there is no unequivocal indication that Hawaii has consented to this suit in federal court, Rapp may only sue the State if the claims fall within the prospective injunction exception enumerated in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441. In order to have standing to obtain prospective injunctive relief, a plaintiff must show some substantial likelihood that the past challenged official conduct will recur in the future. *Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir.1990); *City of Los Angeles v. Lyons*, 461 U.S. 95, 108, 103 S.Ct. 1660, 1668–69, 75 L.Ed.2d 675 (1983) (reasonable showing of a sufficient likelihood that plaintiff will be injured again). Plaintiff must demonstrate a "credible threat" that he will be subject to a specific injury for which he seeks injunctive or declaratory relief. *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir.1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986). "The 'mere physical or theoretical possibility' of a challenged action again affecting plaintiff is not sufficient." *Id.* (citing *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353 (1982)).

Rapp has requested declaratory and injunctive relief: first, he seeks injunctive relief preventing Defendants from enforcing Rule 3.5 against him. Second, Rapp seeks a declaratory judgment that Rule 3.5 is unconstitutional. Both forms of relief prayed for are prospective in nature. In addition, Rapp has satisfied his burden of demonstrating that he will be subject to a specific injury, in particular, disciplinary proceedings or disbarment, if he wishes to speak with jurors from his state case. The court concludes that Rapp's claims for relief, based on an allegedly unconstitutional Rule which is being enforced by state officials, constitute an exception to the Eleventh Amendment doctrine of sovereign immunity under *Ex Parte Young*.

---

5. Rapp does not specifically bring this suit under 42 U.S.C. § 1983, but the court construes it as one, since he is suing the State Defendants in their official capacities as the enforcers of Rule 3.5, for an alleged violation of his First Amendment rights under the United States Constitution.

*See* 209 U.S. 123, 28 S.Ct. 441; *Edelman,* 415 U.S. 651, 94 S.Ct. 1347.

## II. *Younger* Abstention

 The State Defendants also argue that this court should abstain from adjudicating the merits of Rapp's action under principles set forth by the United States Supreme Court in *Younger v. Harris,* 401 U.S. 37, 41, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971). Before *Younger* abstention can be applied to dismiss a federal claim, three requirements must be met: (1) there must be ongoing state judicial proceedings, (2) the state judicial proceedings must implicate important state interests, and (3) the state judicial proceedings must afford the federal plaintiff an adequate opportunity to raise constitutional claims. *Benavidez v. Eu,* 34 F.3d 825, 831 (9th Cir.1994) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982)). "All three elements of *Younger* must be present in order for abstention to be appropriate." *Benavidez,* 34 F.3d at 832.

The State submits that *Younger* abstention is appropriate in this case. The court disagrees. As Rapp correctly points out, abstention is improper in this case because there are no ongoing state judicial proceedings. *Cf. Middlesex,* 457 U.S. at 431–38, 102 S.Ct. at 2521–24 (pending state bar disciplinary proceedings constituted an ongoing state judicial proceeding). The court is unaware of any pending disciplinary proceedings against Rapp in connection with this case; rather, here, there is only the potential for the institution of disciplinary proceedings against Rapp, which is insufficient for abstaining under *Younger.*

## III. Revision of Rule 3.5

 The State Defendants also assert that this court should dismiss the case because Rule 3.5 is undergoing significant modification, and that the modifications may effectively address the issues raised in this proceeding. According to the State Defendants, at its November 16, 1995 meeting, the Disciplinary Board considered and approved the final draft of a proposed amendment to Rule 3.5, which provides for an exception on ex parte communications in the case of communications with discharged jurors. *See* Declaration of James A. Kawachika, at ¶ 2. Also, the State Defendants allege that pursuant to the Disciplinary Board's instructions, Chair James Kawachika transmitted to the Hawaii Supreme Court the proposed amendment to Rule 3.5 ("proposed amendment") by his letter of December 8, 1995, with the request that the court adopt the proposed amendment. *Id.* at ¶ 3.

Rule 17(g) of the Rules of the Supreme Court of Hawaii ("RSCH") specifies the procedure by which rule amendments are proposed and adopted by the Hawaii Supreme Court, and requires a ninety (90) day notice to the Board of Directors of the Hawaii State Bar Association ("HSBA") and publication of notice in the Hawaii Bar News, which requires six weeks' lead time for publications. *Id.* at ¶¶ 4–6; Exhibit G to State Defendants' Motion. According to the State Defendants, interest in the proposed amendment to Rule 3.5 remains high among the Disciplinary Board and the HSBA. The State Defendants report that the communication between the Disciplinary Board and the Hawaii Supreme Court concerning the proposed amendment, with required notification of the HSBA in accordance with the provisions of RSCH 17(g), and the Supreme Court's consideration of and action upon the proposed amendment, might be completed by early June 1996. State Defendants' Statement of Facts, at ¶ 11.

 The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201. "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so. Of course a District Court cannot decline to entertain an action as a matter of whim or personal disinclination. A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, *exercised in the*

*public interest." Public Affairs Assocs. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581–82, 7 L.Ed.2d 604 (1962) (per curiam) (internal citations and quotation omitted) (emphasis added).

The State Defendants cite two cases, *A.L. Mechling Barge Lines, Inc. v. United States,* 368 U.S. 324, 331, 82 S.Ct. 337, 341–42, 7 L.Ed.2d 317 (1961), and *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074–75, 71 L.Ed.2d 152 (1982), in support of their motion to dismiss based on Rule 3.5's ongoing revisions. Both cases are distinguishable from the one at bar.

*A.L. Mechling* was an action brought by barge lines to set aside an Interstate Commerce Commission order granting certain tariff relief to railroads, and for a declaratory judgment that the Commission lacked the authority to grant relief without completing a full investigation. The barge lines maintained that the Commission's administrative practice of granting railroads relief as to protested tariffs without a full investigation or hearing, was a continuing one, and prayed for a declaration that the practice was beyond the powers of the Commission. *Id.,* 368 U.S. at 327, 82 S.Ct. at 339–40. Pending the determination of the action, the railroads notified the Commission that it no longer needed the relief granted, and the district court granted the Commission's motion to dismiss the action.

The Supreme Court first held that the action was moot because the railroad no longer needed the relief that had been temporarily granted and that the district court should have vacated the Commission's order which it had dismissed. *Id.* at 329–30, 82 S.Ct. at 340–41. The barge lines argued that since the "practice of the Commission in granting 'temporary' authority for [tariff] departures to the Railroads over the protests of appellants and without any hearing or findings in order granting such authority" was a "con-

tinuing" one, there was an actual controversy within the jurisdiction of the Court to resolve by declaratory judgment. *Id.* However, in finding that a declaratory judgment was inappropriate, the court placed importance on the fact that the Commission had agreed to amend the challenged practice; the Court stated, "[i]t thus appears that one of the 'continuing' practices whose validity appellants would have us adjudicate continues no longer." *Id.* at 330–31, 82 S.Ct. at 341–42. The State Defendants here focus on the language that followed:

> Declaratory judgment is a remedy committed to judicial discretion. Nor need this court first have the view of a lower court before it may decide that such discretion ought not to be exercised. We think that sound discretion withholds the remedy where the challenged "continuing practice" is, at the moment adjudication is sought, undergoing significant modification so that its ultimate form cannot be confidently predicted.

*Id.* at 331, 82 S.Ct. at 342. Since the Supreme Court first found that the challenge was moot, it did not rest its holding solely on the possibility that the Commission's practice was being altered. Moreover, the State Defendants do not argue here that Rapp's claims are moot.

The facts of this case are markedly dissimilar to those presented in *A.L. Mechling.* Most importantly, although the State Defendants report that Rule 3.5 is undergoing significant revisions, unlike the scenario presented in *A.L. Mechling,* since the revisions have not yet been conclusively adopted by the Supreme Court and are not presently in effect, Rapp's constitutional claims are not moot. Furthermore, *Aladdin's Castle* is equally inapplicable here, as that case also involved a question of mootness. *See* 455 U.S. at 288–89, 102 S.Ct. at 1074.[6]

---

6. Moreover, to the extent that this case is applicable, it appears to support a proposition contrary to that of the State Defendants. The Court in *Aladdin's Castle* stated:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such aban-

donment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power. In this case, the city's repeal of the objectionable language [in the ordinance] would not preclude it from reenacting precise-

This court concludes that adjudication of this case is in the best interest of the public since at issue here is a prior restraint on a First Amendment freedom. "A prior restraint ... has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions ... 'chills' speech, prior restraint 'freezes' it at least for the time." *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976).[7] Dismissal of this case is unwarranted despite the State Defendants' contentions that any alleged constitutional infirmities of Rule 3.5 will likely be addressed and corrected by early June 1996. Moreover, since the State Defendants did not file a draft of the proposed changes with their motion or specifically discuss the proposed changes at the hearing, the court can not know or conclusively determine whether Rapp's challenge would in fact be mooted. Accordingly, this court must engage in a constitutional review of Rule 3.5(b).

## IV. Constitutionality of Rule 3.5(b)

■ Rapp alleges that Rule 3.5(b) is unconstitutional as interpreted by the Hawaii Supreme Court because it infringes on his guarantees of free speech. While he does not dispute the fact that "ethical authorities have a right to prohibit harassment or embarrassment," he argues that "the First Amendment should preclude a blanket ban on any and all ex parte post verdict communication between trial lawyers and jurors. Rapp's Motion for Partial Summary Judgment, at 12.[8]

Prior to the Hawaii Supreme Court's adoption of Rule 3.5 in 1993, post-trial contacts with jurors were permitted under Disciplinary Rule 7–108(D) of the Code of Professional Responsibility as long as they were not "calculated merely to harass or embarrass the juror or to influence his action in future jury service." Rule 3.5(b), however, permits only those contacts otherwise "permitted by law." *See* Rule 3.5(b).

The Hawaii Supreme Court interpreted Rule 3.5(b) in *State v. Furutani,* 76 Hawai'i 172, 177 n. 8, 873 P.2d 51 (1994). The court set forth the rule in a footnote stating, "[s]ubsequent to January 1, 1994, all post-trial communications between attorneys and juror, relating to the subject matter of the trial, must be in the presence of all parties to the proceeding or their legal representatives." 76 Hawai'i at 177 n. 8, 873 P.2d 51. The court did not, however, base its holding on that interpretation.[9]

The State Defendants argue that Rule 3.5(b) is constitutional, pointing to a line of cases upholding, in First Amendment challenges, similar rules restricting lawyers' post-verdict contact with jurors. *See Haeberle,* 739 F.2d 1019; *United States v. Hooshmand,* 931 F.2d 725 (11th Cir.1991); *United States v. Griek,* 920 F.2d 840 (11th Cir.1991); *Maldonado v. Missouri Pacific Ry. Co.,* 798 F.2d 764 (5th Cir.1986). They urge this court to follow the basic reasoning of the Court of Appeals for the Fifth Circuit in *Haeberle,* and hold that Rule 3.5(b) does not violate Rapp's First Amendment rights.

The Court of Appeals for the Fifth Circuit, in *Haeberle,* upheld the constitutionality of a

---

ly the same provision if the District Court's judgment were vacated.
455 U.S. at 289, 102 S.Ct. at 1074–75.

**7.** The United States Supreme Court has recognized that, "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n,* 427 U.S. at 559, 96 S.Ct. at 2803.

**8.** Rapp mistakenly likens this issue to those involving commercial speech and situations involving post verdict interviews with jurors sought by the press. *See Haeberle v. Texas Int'l Airlines,* 739 F.2d 1019, 1021–22 (5th Cir.1984).

**9.** In *Furutani,* several hours after a jury rendered a criminal guilty verdict, a complaining juror contacted the Fifth Circuit court and defense counsel to announce that she had changed her mind about the verdict; she told the circuit court that "she had voted to convict only because she was pressured to do so by other jurors who wanted to go home for the weekend." *Id.* at 177, 873 P.2d 51. In light of the complaining juror's announcement, the prosecution retained a private investigator to contact the foreperson of the jury. The court stated that although the previous disciplinary rules did not prohibit the type of post-trial ex parte communication with a juror in the present matter, it is clear that HRPC 3.5(b)

rule forbidding counsel to interview jurors without leave of court. 739 F.2d at 1020. That rule provided:

> [N]either the attorney nor any party to an action nor any other person shall himself or through any investigator or other person action for him interview, examine or question any juror, relative, friend or associate thereof either during the pendency of the trial or with respect to the deliberations or verdict of the jury in any action, except on leave of Court granted upon good cause shown.

739 F.2d at 1020–21. In that case, after a judgment was rendered, counsel for the losing party sought leave to interview jurors willing to discuss the trial, on the basis that counsel for both sides could learn a lot from an opportunity to chat with jurors. The petition submitted to the district court specifically stated that leave was sought for the purpose of "educating counsel" and not to impeach the jury's verdict, and presented First Amendment arguments. *Id.* at 1021. Even though the motion was unopposed, the district court denied leave. *Id.*

First, the Fifth Circuit explained that there are several reasons why reviewing courts are reluctant to overturn a denial of leave to interview jurors, stating, "[f]ederal courts have generally disfavored post-verdict interviewing of jurors ... Prohibiting post-verdict interviews protects the jury from an effort to find grounds for post-verdict charges of misconduct, reduces the 'chances and temptations' for tampering with the jury,

increases the certainty of civil trials, and spares district courts time-consuming and futile proceedings." *Id.* at 1021.

Second, the court examined the First Amendment interests presented and concluded that the petitioners' asserted reasons for the interviews, "while not without first amendment significance, [were] not 'paramount' like the public's right to receive information necessary for informed self-government. The petitioners' access to information from jurors carries far less weight in the first amendment scale than a restriction on access to information that affects political behavior." *Id.* at 1022.[10] The court found that the jurors' interest in privacy and the public's interest in "well-administered justice," outweighed the interest in improving their advocacy. *Id.*[11]

Similarly, in the context of a criminal trial, the First Circuit, in *United States v. Kepreos,* 759 F.2d 961, 966 (1st Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985), announced a new rule prohibiting counsel to interview jurors except under the supervision of the district court, and then only in extraordinary circumstances. The court stated, "[p]ermitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative sources of resources of the parties." *Id.*[12] (citations omitted).

---

and 8.4 did. 76 Hawai'i at 177 n. 8, 873 P.2d 51.

**10.** The *Haeberle* court stated:

> Weighty first amendment interests may be harmed by inhibiting the flow of information from jurors to the public. To protect those interests, we [have] declared the denial of leave for a reporter to interview jurors unconstitutional....

739 F.2d at 1021.

**11.** The court also based its holding on the fact that the attorneys, by voluntarily assuming roles as trial participants and officers of the court, subject themselves to greater restraints on their communications than might constitutionally be applied to the general public. 739 F.2d at 1022.

**12.** The Eleventh Circuit has reached a similar conclusion also in the context of a criminal case. *United States v. Griek,* 920 F.2d 840, 842–43

(11th Cir.1991). In *Griek,* a criminal defendant, after a guilty verdict was rendered against him, initiated a First Amendment challenge against a local rule which provided for jury polling "after the jury has been discharged, upon application in writing and for good cause shown ... to determine whether the verdict is subject to legal challenge." 902 F.2d at 842. That court noted the need to balance the First Amendment right with the Sixth Amendment right of a criminal defendant to a fair trial by an impartial jury, and proceeded to determine whether the First Amendment protection outweighs other important government interests. *Id.* at 842. The court examined the common law rule preventing a juror from being required to testify to impeach a verdict and concluded, "[i]t is thus clear that the compelling government interest to be protected in a case such as this is the right of criminal defendants to be tried by a jury whose deliberations cannot be exposed to public view except by a showing of outside influence...." *Id.* at 843;

Additionally, *State of New Jersey v. Loftin,* 287 N.J.Super. 76, 105–09, 670 A.2d 557, 572–74 (1996), involved a criminal defendant's appeal of a state court's denial of his request for post-trial interviews. Specifically, the defendant challenged the constitutionality of a local rule which provided, "[e]xcept by leave of court granted on good cause shown, no attorney or party shall directly ... examine, or question any grand or petit juror with respect to any matter relating to the case." 287 N.J.Super. at 107, 670 A.2d at 573. The court examined the meaning of "good cause," that was well established by New Jersey case law, and upheld the constitutionality of the rule; the court concluded, "[i]n allowing attorneys and litigants to question jurors for good cause, the rule provides a remedy for those *extraordinary situations where an injustice might otherwise result." Id.* at 109, 670 A.2d at 574 (emphasis added).

The Florida Supreme Court's decision in *Florida Bar v. Newhouse,* 498 So.2d 935, 936–37 (Fla.1986), also discussed a "narrow exception" to the rule prohibiting post-verdict interviews by attorneys. In that case, a state rule of civil procedure provided that leave of the trial judge was needed before contacting members of a jury post verdict. 498 So.2d at 936. Under that rule, a party who believed legal grounds existed for questioning jurors, was required to file a motion with the trial court. *Id.* at 936–37. "After notice and hearing, the trial judge determine[d] whether the interviews [were] allowed." *Id.* at 937.[13] Additionally, Florida had adopted a disciplinary rule which mandated that an attorney who believed he or she had legal grounds to question a juror, ensure that the attorney avoid either embarrassing the juror or influencing the juror's action in any subsequent jury service. *Id.*

 Two general principles emerge from the above cited cases: first, is clear that the public policy holding jury deliberations and

verdicts inviolable and the aim of protecting the privacy of jurors are two compelling interests. Second, there is no question that courts in general and the Hawaii Supreme Court in particular have the inherent authority to control or limit access to jurors to further those interests. Furthermore, lawyers do not have unfettered rights with respect to the trial process.[14] However, upon careful examination, it becomes evident that Rule 3.5(b) presents problems distinct from those in *Haeberle, Kepreos, Loftin* and *Newhouse,* necessitating a separate First Amendment analysis here.

 While prior restraints are not unconstitutional per se, any system of prior restraint bears a heavy presumption against its constitutional validity. *See Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 558, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683 (1976). This court must therefore examine whether Rule 3.5(b), a prior restraint imposed to prohibit the exercise of First Amendment rights, serves the compelling state interests discussed above.

The court finds that Rule 3.5(b) as interpreted and applied suffers from two chief infirmities. First, the language of the rule prohibiting ex parte communication with jurors "except as permitted by law," is unconstitutionally vague and overbroad. At the hearing, the State Defendants suggested that the rule requires an examination of Hawaii law or a specific determination by a judge, as to whether juror contact is permitted by law. The State Defendants point to the fact that Rapp himself understood that he could, once opposing counsel refused to join Rapp to interview the jurors, petition the court for permission. However, there is nothing in the record to indicate why Judge Heely denied Rapp leave to interview the dismissed jurors. The plain language of Rule 3.5(b) does not specifically indicate whether a judge has the authority to grant leave, or whether

see *United States v. Hooshmand,* 931 F.2d 725, 737 (11th Cir.1991).

**13.** Importantly, the Florida Supreme Court emphasized that the rule "is not intended to authorize 'broad hunting expeditions or fishing excursions.'" 498 So.2d at 937 (citations omitted).

**14.** Upon accepting a license to practice law and enjoying the privilege, attorneys agree to certain restrictions on otherwise constitutionally granted freedoms. It should be noted that in return for the opportunity to serve, Judges agree to even more severe limitations upon their rights of free speech, association, etc.

"good cause" or "exigent circumstances" for seeking the interviews must be shown. Moreover, this court has not found any Hawaii case law which either sets forth an exception to Rule 3.5(b) in circumstances where counsel suspect that jury misconduct has occurred or a procedure that an attorney needs to follow if that attorney does have such suspicions. Additionally, no Hawaii case has discussed what might amount to good cause warranting jury interviews, if good cause is the applicable standard. The confusion caused by the vague language "as permitted by law" is thus apparent.

Rule 3.5(b) does not either by its language or as interpreted, operate like the rules at issue in the cases cited above; rather, it is unclear how the rule would be applied in circumstances which may warrant the grant of post-verdict interviews by a trial court. That is, a description of the mechanism for review by a trial judge is conspicuously absent from the rule. Moreover, the standard "as permitted by law" provides little guidance to lawyers as to when jurors can appropriately be contacted. What is clear is that, "[a]s the rule presently operates, one attorney can effectively block any post-trial contact with jurors by refusing to participate in a joint interview of jurors with the other attorney." Affidavit of James J. Bickerton, at ¶ 5.[15]

Second, the probable efficacy of Rule 3.5(b), as it has been interpreted by the Hawaii Supreme Court, in protecting jury members and their verdicts, is minimal at best. Rapp correctly points out:

> Rule 3.5 permits communications with jurors which are not "ex parte." Evidently, the problems of harassment ... are not so severe that all communications have been precluded. *Joint communications with counsel for both parties may occur [without leave of court].* Thus, the Hawaii Supreme Court has not perceived a need to shut down all communications with jurors. Instead, Rule 3.5 places in the hands of opposing counsel a veto power over whether communications will take place.

> . . . . .

> Where there is a possibility of jury misconduct and a potential new trial motion or appeal, the last person who should have a veto power on whether communications take place is opposing counsel.

Rapp's Memorandum in Opposition to State Defendants' Cross Motion for Summary Judgment, at 4–5 (emphasis added). If the aim of Rule 3.5 is to protect the sanctity of jury verdicts and prevent jury harassment, it misses the mark. Instead, as interpreted, the rule would theoretically allow two unscrupulous lawyers who agree to interview jurors together, to engage in a jury harassment "free for all" with no court supervision. Clearly, the limitations Rule 3.5 places on ex parte jury communications is not well-tailored to achieve the State's compelling interests.[16] In fact, the State Defendants admit-

---

**15.** Bickerton states that "[t]o his knowledge, this [blocking] has actually [] happen[ed] quite often." Affidavit of James J. Bickerton, at ¶ 5.

**16.** Indeed, some of the exhibits attached to Rapp's Affidavit, filed December 28, 1995, indicate that the HSBA and its members were troubled by the language of Rule 3.5. In Exhibit G, entitled, "Summary of Proposed Rules of Professional Conduct," H. Baird Kidwell, a member of the Model Rules Committee writes:

> Rule 3.5—Impartiality and Decorum of the Tribunal A Lawyer is prohibited from seeking to influence a judge, juror, prospective juror or official by means prohibited by law. Ex parte communication with any such person at anytime is barred, "except as permitted by law." In the absence of any provision of Hawaii law expressly permitting it, post-trial communication with jurors appears to be barred by this

rule. Conduct intended to disrupt a tribunal is prohibited.

Also, then HSBA President Sherry P. Broder's Letter to Chief Justice Moon, dated November 19, 1983, regarding the Proposed Hawaii Rules of Professional Conduct states with respect to Rule 3.5:

> The Board feels that an outright prohibition on *ex parte* juror contact, except as permitted by law, is broader than necessary to protect jurors and the legal process, and that the possible abuses which Rule 3.5(b) meant to curb can be handled through less drastic means. One suggestion is to promulgate standard discharge instructions for judges to give the jury regarding communication with attorneys after trial. In the interest of preserving the ability of attorneys to appropriately communicate with jurors after a trial is concluded, the Board recommends that subsection (b) be deleted from Rule 3.5 as set forth below:

ted at the hearing that perceived problems with the rule prompted a desire to amend the rule even *before* Rapp initiated this action. It must be emphasized that while Rule 3.5(b) as presently constituted is constitutionally flawed, the State Defendants have demonstrated a compelling interest in preserving the integrity of the trial process by protecting jurors from post trial harassment and unnecessary intrusion by lawyers. There is no question that a properly tailored rule such as those discussed in the cited cases above can pass constitutional muster.

The court concludes that Rule 3.5(b) as presently constituted is UNCONSTITUTIONAL for the reasons stated above. Accordingly, the court GRANTS Rapp's Motion for Partial Summary Judgment and DENIES the State Defendants' Cross–Motion for Summary Judgment.

## V. Preliminary Injunction

■■■ The facts alleged in support of Rapp's motion for a preliminary injunction deviate only slightly from the facts contained in Rapp's Complaint: first, Rapp asserts claims that the value of the information he seeks from jurors will diminish with time.[17] Motion for Preliminary Injunction, at 12. Second, Rapp reports that a juror from the state proceeding has independently attempted to communicate with Rapp through an unsolicited letter. *See* Exhibit A to Plaintiff's TRO Motion; Rapp Affidavit at ¶ 13. Plaintiff asserts that he is presently being irreparably harmed because "his right to engage in free speech is being chilled by the prospect of a suspension or disbarment if he communicates ex parte with trial jurors." Motion for Preliminary Injunction, at 12.

■■■ The grant of a motion for a preliminary injunction is within the discretion of the district court. *See Senate of California v. Mosbacher*, 968 F.2d 974, 975 (9th Cir. 1992). In the Ninth Circuit, a party seeking a preliminary injunction must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the movant's] favor. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994) (internal citations omitted). With respect to the injury requirement, "the party seeking the injunction must demonstrate that it will be exposed to some significant risk of irreparable injury. . . . A plaintiff must do more than merely allege imminent harm sufficient to establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Associated Gen. Contractors of Cal., Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992).

It is well settled that the loss of First Amendment freedoms for even minimal peri-

---

A lawyer shall not:
(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law; *or*
~~(b) communicate ex parte with such a person except as permitted by law; or~~
~~(c)~~(b) engage in conduct intended to disrupt a tribunal.
*See* Exhibit H to Rapp Affidavit. Furthermore, Exhibit I, entitled, "Proposed Hawaii Rules of Professional Conduct Summary of HSBA Member Comments," states in pertinent part:
All ex parte contact between jurors . . . and attorneys is prohibited, without limitation to time, place, or content, unless explicitly permitted by law . . . Rule probably prohibits all communication, no matter who initiates. . . .

Outright prohibition of ex parte post trial juror contact is broader than necessary to protect jurors and legal process. Might limit ability to ascertain whether juror misconduct occurred that might warrant a mistrial. Jurors have a lot of unanswered questions after trial and feel better being able to talk to attorneys after trial. No evidence of abuse of this procedure in Hawaii. . . .

17. Rapp states, "[t]he value of communications with jurors decreases substantially over time. It is common knowledge that memories are keenest when they are freshest. The jury's reactions in the days following the verdict will be the most reliable and meaningful." Motion for Preliminary Injunction, at 12.

ods of time constitutes irreparable injury justifying the grant of a preliminary injunction. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976).[18] Rapp has sufficiently demonstrated how Rule 3.5(b) has chilled his speech. Since this court has already held that Rule 3.5(b) is unconstitutional as an unreasonable restraint on speech, Rapp's Motion for a Preliminary Injunction is GRANTED. The State Defendants are enjoined from enforcing Rule 3.5(b) as presently constituted.

### CONCLUSION

For the reasons discussed above, the court holds Rule 3.5(b) of the Hawaii Rules of Professional Conduct UNCONSTITUTIONAL; GRANTS Plaintiff's Motion for a Preliminary Injunction; GRANTS Plaintiff's Motion for Partial Summary Judgment; and DENIES the State Defendants' Cross–Motion for Summary Judgment.

IT IS SO ORDERED.

---

**18.** In addition, generally, an alleged deprivation of a constitutional right is sufficient to constitute an irreparable injury. *See Cate v. Oldham,* 707 F.2d 1176, 1188 (11th Cir.1983).